Felton M. HILLIARD, Appellant,

v.

STATE OF ARIZONA, Appellee.

No. 20602.

United States Court of Appeals
Ninth Circuit.

June 24, 1966.

Lawrence C. Cantor, Phoenix, Ariz., for appellant.

Darrell F. Smith, Atty. Gen. of Ariz., James S. Tegart, Asst. Atty. Gen. of Ariz., Phoenix, Ariz., for appellee.

Before HAMLEY and JERTBERG, Circuit Judges, and THOMPSON, District Judge.

THOMPSON, District Judge:

This is an appeal from the denial by the United States District Court for the District of Arizona of Felton M. Hilliard's Petition for a Writ of Habeas Corpus. Appellant was convicted of rape and burglary by a jury in an Arizona trial court in 1959. When the case came on for trial, one of the prospective jurors stated, on voir dire: "Your Honor, I don't know if I am acquainted with him [the defendant] or not, but he is the one that attacked my daughter several years ago, so * * *." The trial judge promptly declared a mistrial, dismissed the jury panel, and, on the following day, excused all the new prospective jurors who indicated they had heard of the events of the preceding day. After a defense motion for a continuance until a new jury venire[1] could be called was denied, a jury chosen from the remaining prospective jurors was impaneled.

At the commencement of the trial, and again at the end of that day's proceedings, the Judge instructed the jury regarding their duties as jurors, admonishing them to avoid out of court communications relating to the case, including newspaper articles.[2] That evening and again on the morning of the next day, there appeared in the local newspapers articles respecting Hilliard's initial court appearance and the resulting mistrial.[3] When Court convened the next day, the trial judge refused defense counsel's request to poll the jury to ascertain if any of the jurors had read the articles. This refusal and the denial of a continuance, which were the subject of an unsuccessful appeal to the Supreme Court of Arizona, reported at 89 Ariz. 129, 359 P.2d 66, constitute the bases for the Petition, and it is urged that these events resulted in denial to Appellant of his constitutional right to a trial by a fair and impartial jury. The District Court disagreed with this contention, and so do we.

It is clear that massive adverse publicity and intrusion of representatives of the news media into the trial itself can so alter or destroy the constitutionally necessary judicial atmosphere and decorum that the requirements of impartiality imposed by due process of law are denied to the defendant. Sheppard v. Maxwell, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600, decided June 6,

1. It appears that a jury pool of some three hundred veniremen were available at the Courthouse from which panels of fifty to sixty were selected to service the various departments of the Court. Defendant's motion was directed toward disqualification of the entire venire rather than only the new panel of sixty summoned for the second day.

2. At the outset of the trial, the Court admonished the jury as follows:

"During the recess and all future recesses, * * * it is quite important under the circumstances that you be alert and do not permit any communication to come to you. I don't care if it is by some individual or through newspaper or radio or television. I don't know, but just do not permit yourselves to be communicated with concerning any matter involving this case in any way, shape or form."

And at the end of the first day's proceedings, the admonishment was:

"* * * Do not permit anyone to endeavor to discuss any phase of this proceeding. Do your best to remain out of the hearing of any radio announcement, if such there be, or television, or newspaper. In other words, do not permit yourselves to be communicated with in any way, shape or form concerning the possible facts of this particular case."

3. The specific newspaper article of which complaint is made read as follows:

"* * * His first experience in court Monday was dramatically termed a mistrial before a jury could be selected.

"The mistrial resulted when a woman on the jury panel, in answer to a question by Judge Warren L. McCarthy, accused Hilliard of raping her daughter two years ago. The judge had asked the panel if anyone knew the defendant."

1966; Estes v. Texas, 381 U.S. 532, 85 S.Ct. 1628, 14 L.Ed.2d 543 (1965); Rideau v. Louisiana, 373 U.S. 723, 83 S.Ct. 1417, 10 L.Ed.2d 663 (1963); Irvin v. Dowd, 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961). This is not such a case. Unless we can say that the events which transpired during the state court proceedings amounted to a denial of a fair trial—by which we mean the minimum procedural protections required by the Fourteenth Amendment—we must affirm. As the Supreme Court stated in Spies v. Illinois, 123 U.S. 131, 179–180, 8 S.Ct. 22, 30–31, 31 L.Ed. 80 (1887):

> "In Reynolds v. U. S. [98 U.S. 145, 25 L.Ed. 244], * * * we said ' * * * The case must be one in which it is manifest the law left nothing to the "conscience or discretion" of the court.' If such is the degree of strictness which is required in the ordinary cases of writs of error from one court to another in the same general jurisdiction, it certainly ought not to be relaxed in a case where, as in this, the ground relied on for the reversal by this court of a judgment of the highest court of the State is, that the error complained of is so gross as to amount in law to a denial by the State of a trial by an impartial jury to one who is accused of crime."

■ When a juror's impartiality is put in issue, the nature and extent of permissible inquiry of that juror, to ascertain if he has any opinions about the case and if so, whether such opinions would influence him and prevent him from finding his verdict solely in accordance with the evidence presented in Court, is a matter within the discretion of the trial judge and raises no constitutional issue unless the procedures followed are, as a whole, unreasonable and devoid of purpose to obtain an impartial tribunal. Reynolds v. United States, supra; Connors v. United States, 158 U.S. 408, 15 S.Ct. 951, 39 L.Ed. 1033 (1895); Holt v. United States, 218 U.S. 245, 31 S.Ct. 2, 54 L.Ed. 1021 (1910). Cases

such as Itow v. United States, 223 F. 25 (9th Cir. 1915); United States v. Mesarosh, 223 F.2d 449 (3rd Cir. 1955); United States v. Jannsen, 339 F.2d 916 (7th Cir. 1965); Palmer v. United States, 340 F.2d 48 (5th Cir. 1964); and Semler v. United States, 332 F.2d 6 (9th Cir. 1964), are not very helpful to us because, although they deal with the discretion of the trial judge in this general area, in each of them the jurors were interrogated after prejudicial articles appeared during the trial, whereas here the requested interrogation was refused.

The Sixth and Seventh Circuits have apparently established the rule for federal trials in those Circuits that the trial judge must interrogate the jurors whenever prejudicial articles which may have reached the jurors have been published. Marson v. United States, 203 F.2d 904 (6th Cir. 1953); United States v. Accardo, 298 F.2d 133 (7th Cir. 1962); United States v. Jannsen, supra. The theory of these courts seems to be that it should be assumed, so long as the jury was not sequestered and until the contrary is proved, that the jurors have read the offending articles, even if their doing so is a violation of the Court's admonition. See Briggs v. United States, 221 F.2d 636 (6th Cir. 1955), and compare with it Coppedge v. United States, 106 U.S.App.D.C. 275, 272 F.2d 504 (1959), and Meyer v. Cadwalader, 49 F. 32 (3rd Cir. 1891). Other courts, including the Supreme Court of Arizona in this case, have not made this assumption and have held that it is not error for the trial judge, in the circumstances of each case, to refuse to interrogate the jurors as to whether they, or any of them, had read allegedly prejudicial articles in violation of the admonition during trial. Ford v. United States, 233 F.2d 56 (5th Cir. 1956); United States v. Wenzel, 311 F.2d 164 (4th Cir. 1962); also see cases collected in Annotation, 15 A.L.R.2d 1152, and 2 A.L.R.2d Later Case Service, p. 836. This Court has declined to assume that jurors ignore admonitions. In Cohen v. United States,

297 F.2d 760, 764 (9th Cir. 1962), we said:

"There is no showing that any juror read or even saw any of the offending articles; it is merely urged that they must have seen them. To so hold, we would have to presume that the jurors disregarded repeated and emphatic instructions by the Court. The presumption is the other way. As Mr. Justice Holmes said in Holt v. United States, 218 U.S. 245, at p. 251, 31 S.Ct. 2, at p. 6, * * * 'If the mere opportunity for prejudice or corruption is to raise a presumption that they exist, it will be hard to maintain jury trial under the conditions of the present day.'

"The matter was within the sound discretion of the trial judge; we cannot say that his judgment about it was wrong."

 Whether or not the "better practice" is to allow interrogation of the jury whenever possibly prejudicial articles are called to the attention of the trial judge, this is a procedural problem to be solved by the state court, and unless the procedures followed for the selection and maintenance of a fair and impartial jury, viewed as a whole, are not reasonably directed toward and effective for the accomplishment of such purposes, there has been no violation of the right of the accused to due process of law under the Fourteenth Amendment. See: Lisenba v. California, 314 U.S. 219, 62 S.Ct. 280, 86 L.Ed. 166 (1941); Leland v. Oregon, 343 U.S. 790, 72 S.Ct. 1002, 96 L.Ed. 1302 (1952), "The judicial judgment in applying the Due Process Clause must move within the limits of accepted notions of justice and is not to be based upon the idiosyncrasies of a merely personal judgment * * *. An important safeguard against such merely individual judgment is an alert deference to the judgment of the state court under review." Mr. Justice Frankfurter, concurring in Malinski v. New York, 324 U.S. 401, 417, 65 S.Ct. 781, 789, 89 L.Ed. 1029 (1945). We do not believe that the actions of the Arizona trial court in this case can, under any legitimate view of the facts, be magnified into constitutional error. Therefore, denial of the Petition was proper.

Affirmed.