Frank Vega CANO, Petitioner,

v.

STATE OF ARIZONA et al.,
Respondents.

No. Civ–69–154 Phx.

United States District Court
D. Arizona.

June 17, 1969.

Frank Vega Cano, in pro. per.

Gary K. Nelson, Atty. Gen., Phoenix, Ariz., for defendants.

## ORDER

CRAIG, District Judge.

Frank Vega Cano, in state custody, seeks relief in this Court by way of a petition for writ of habeas corpus, pursuant to Title 28 U.S.C. § 2241(c) and Title 28 U.S.C. § 2254.

Cano was charged in the Superior Court of Arizona in and for the County of Maricopa with murder in the first degree. In January, 1966, Cano and a codefendant, Armando Luis Lopez, were tried before a jury, each being represented by appointed counsel. The trial resulted in the conviction of both defendants of the crime of murder in the first degree, each defendant receiving a life sentence. On appeal, Cano's conviction was affirmed; the conviction of Lopez was reversed. State v. Cano, 103 Ariz. 37, 436 P.2d 586. Cano then sought habeas corpus relief in this Court, acting *pro se*. This application for relief was denied, the Court finding that Cano had not exhausted remedies available in the state courts. Cano v. Eyman, No. Civ–6781–Phx., (October 2, 1968). Cano then filed an application for post-conviction relief in the Arizona Supreme Court, which was denied without written opinion. Cano v. Eyman, No. H–342 (February 18, 1969). Cano reapplied for habeas corpus relief in this Court on April 16, 1969, and this Court ordered respondent to file the complete record of state court proceedings in this matter. This material having been received, and the Court having reviewed the entire record, Cano's application for a writ of habeas corpus is denied for the reason that the record shows conclusively that Cano is not incarcerated in violation of the Constitution or laws of the United States.

In ruling on this application for relief, the Court has liberally construed the applicant's petition, assuming that Cano seeks to raise all grounds for relief that he claims, or appears to claim are due him. Furthermore, this Court concludes that no state court remedies remain open to Cano with respect to these asserted grounds for relief.

■ (1) Cano contends that two law enforcement officers knowingly gave false testimony at his trial. In support of this allegation, Cano relies solely upon the trial transcript, asserting that the officers "admitted" giving perjured testimony. The testimony of these officers reveals no such admissions. Rather, their testimony reflects the normal clarification of language and the crystallization of memory that accompanies vigorous direct and cross-examination. This contention is frivolous.

■ (2) Cano contends that he was denied the right to a fair and impartial trial due to prejudicial publicity. The record reflects a motion for a mistrial by counsel for Lopez because of the publication of a newspaper article misquoting the opening argument of Cano's counsel in a manner prejudicial to Lopez. No such motion was made by Cano's counsel. It is apparent from the record that such a motion would have been frivolous, the newspaper article in question being in no way prejudicial to Cano. (T. pp. 75–81.) Assuming the article contained statements prejudicial to Cano, the trial court would have committed no error of constitutional dimension in denying a motion for a mistrial, being entitled to rely upon the careful admonitions previously given to the jury to avoid all contact with the news media throughout the trial. *See* Hilliard v. Arizona, 9 Cir., 362 F.2d 908. This contention is without merit.

■ (3) Cano asserts that he was not tried by an impartial jury. In support

of this assertion he notes that information had been brought to the attention of the trial court that at least one juror had determined the guilt of the defendants prior to the submission of all the evidence. This matter was the subject of a meeting in chambers, all counsel being present. (T. pp. 903–17.) The trial court stated that he had received information that a juror might have formed an opinion as to the guilt of the defendants; that upon receipt of this information, which he termed trivial, he had discussed the matter with both the juror and her husband; and that after careful inquiry of both individuals he was "thoroughly convinced" that the juror was not biased and had not violated her oath as a juror. The trial court concluded that the information received "was just a rumor that had no bearing whatever on the case." (T. p. 912.) Cano's counsel stated that "[t]here is no question about the juror," and that he had "no question at all that the juror has not been influenced or biased." (T. p. 908.) Neither defense counsel requested the trial court to further interrogate the suspected juror, or any other juror, nor did they request that the suspected juror be replaced by one of the alternate jurors. Neither defense counsel filed a motion for a mistrial on the grounds of a suspectedly biased juror. Neither defense counsel challenged the jury panel either by way of post-trial motions or on appeal. In view of the careful inquiry made by the trial court into the juror's alleged bias, and in light of the acquiescence of both defense counsel in the trial court's determination that the juror suspected of bias had not violated her oath, Cano's contention that he was denied a fair and impartial trial in the state court is without merit. *See* Hilliard v. Arizona, *supra*.

(4) Cano contends that the County Attorney made improper remarks to the jury in closing argument. The record shows nothing in closing argument that would entitle Cano to relief in this Court.

(5) Cano asserts that he was absent from the proceedings during part of his trial, and that his absence was not a voluntary waiver of his presence. The transcript and the minute entries, while not in complete accord, reflect that Cano was not present during at least a portion of a hearing conducted on January 26–27, 1966, outside the presence of the jury, on the admissibility of certain out-of-court statements made by codefendant Lopez. (T. pp. 229–38.) Both the transcript and the minute entries show that Cano's counsel was present throughout the hearing.

Assuming Cano's absence on either or both days, his claim for relief on this ground is not well taken. In Stegall v. United States, 6 Cir., 259 F.2d 83, cert. den., 358 U.S. 886, 79 S.Ct. 128, 3 L.Ed. 2d 114, the Court assumed that the appellant was absent from a hearing held to determine whether the confession of a codefendant was admissible in evidence. The Court found that such absence would not entitle appellant to relief, both because his attorney was present throughout the hearing and because he suffered no prejudice by the subsequent admission into evidence of the codefendant's confession, the trial court instructing the jury that the confession could not be considered against appellant.

In the present case, Cano's counsel was present throughout the hearing on the admissibility of the confession of Lopez. In addition, the admission of that confession into evidence violated no right of Cano's. The jury was instructed that the confessions of each defendant could be considered only against the confessing defendant (T. p. 1226); both Cano and Lopez testified before the jury regarding their out-of-court statements, and both were subjected to extensive cross-examination. Under these circumstances, Cano was not deprived of rights guaranteed by Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476. *See* Rios-Ramirez v. United States, 9 Cir., 403 F.2d 1016; Santoro v. United States, 9 Cir., 402 F.2d 920. The Court

concludes that Cano suffered no prejudice as a result of his absence from the hearing on the admissibility of the statements made by codefendant Lopez, and that Cano's absence from that hearing does not entitle him to relief in this Court.

(6) Cano contends that the trial court erred in not conducting a hearing on the voluntariness of certain out-of-court statements made by him to police officers. *See* Pinto v. Pierce, 389 U.S. 31, 88 S.Ct. 192, 19 L.Ed.2d 31; Jackson v. Denno, 387 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908.

Two police officers testified before the jury as to statements made to them by Cano prior to trial. The first officer testified without objection by Cano's counsel. (T. p. 266.) The second officer was interrupted in the midst of his testimony by Cano's counsel, who stated that Cano had "no objection whatsoever" to the admissibility of statements made by Cano to this officer. (T. pp. 324–25.) Two written statements signed by Cano, one a stenographic transcript of an interview with police officers, the other a statement written by Cano while left alone in an interrogation room, were admitted into evidence after Cano's counsel stated that he had no objection to their admission. (T. pp. 333–38.)

No circumstances were presented to the trial court that would have obliged that Court *sua sponte* to conduct a hearing on the voluntariness of Cano's statements. The second officer testified that prior to any interrogation Cano was informed of his right to remain silent, that any statement that he made could be used against him, and that he could contact a lawyer at any time he chose to do so. (T. p. 324.) The record thus reflects compliance with the requirements of Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977, the constitutional standard applicable to Cano's trial. Nothing in the record indicates an overbearing of Cano's will by any means on any of the three dates on which he made statements to police officers. Indeed, on two occasions, August 9 and August 30, 1956, Cano gave statements to the police in the presence of his counsel. The statement of August 30 was given at a meeting requested by Cano (T. p. 363.). At that meeting Cano was once again advised that he had the right to remain silent, that any statement that he made could be used against him, and that his counsel was present. (T. p. 341.) Cano then reiterated the incriminating statement made by him on August 4, 1965, stating that it was his desire to tell the truth. (T. p. 363.)

■ The record conclusively shows that no objection was made to the introduction into evidence of any of the out-of-court statements made by Cano, and that no circumstances were presented to the trial court that would have obliged that court *sua sponte* to conduct a hearing into the voluntariness of those statements. Cano was not denied any right guaranteed by Pinto v. Pierce, *supra*, or Jackson v. Denno, *supra*. *See* Delaney v. Gladden, 9 Cir., 397 F.2d 17, 21–22; Woody v. United States, 126 U.S.App.D.C. 353, 379 F.2d 130; Evans v. United States, 5 Cir., 377 F.2d 535.

(7) Cano contends that the evidence presented at trial on the issue of his sanity at the time of the commission of the crime entitled him to a judgment of acquittal, and that the denial of his motion for a judgment of acquittal constituted a denial of due process of law. This contention is without merit.

■ (8) Cano contends that he was denied the effective assistance of counsel at trial. "Ineffective assistance" of counsel means conduct of counsel so incompetent as to make the trial a farce or a mockery of justice, a representation so ineffective as to be shocking to the conscience of the Court. See Kruchten v. Eyman, 9 Cir., 406 F.2d 304, 312. The record before this Court conclusively shows that Cano was not denied the effective assistance of counsel at trial.

■ The assistance that counsel could render Cano was limited by the facts that: First, the crime was a particularly brutal one, the victim having been

shot numerous times and beaten severely about the head with a heavy object. Second, the victim was an elderly law enforcement officer in one of Arizona's retirement communities. Third, there was never any doubt that Cano was an active participant in this homicide. From the inception of the trial, Cano's counsel struggled to keep his client from receiving the death penalty.

The strategy adopted by counsel in light of these facts is evident from the transcript: first, to secure an acquittal by convincing the jury that Cano was temporarily insane at the time of the killing; second, in the event of a guilty verdict, to secure leniency from the jury by introducing mitigating evidence over and above the evidence offered on the sanity question. Both of these tactics were pursued with diligence. The number of psychiatric witnesses and character witnesses attest to counsel's preparation, and the nature of their testimony indicates a thorough investigation. In addition, the record shows that decisions with respect to the defense to be offered and the manner in which it was to be offered were not solely those of defense counsel. Cano engaged in the following exchange with counsel for Lopez (T. pp. 731–32):

"Q And Mr. Stern, being your lawyer you spoke to him many times, isn't that true?

A Yes.

Q And isn't it true, Frank, that after all the conversations with Mr. Stern and after all of the questioning that Mr. Stern did of you and telling you what he thought was best for you, isn't it true that he finally said to you, and you finally realized that the best thing for you would be to tell what happened as near as you can remember?

A Yes."

Later, when asked why there were certain inconsistencies in his statements to the police and his testimony at trial with respect to the involvement of Lopez, Cano stated (T. p. 736):

"A Because I realize that it's wrong for my cousin to take something that he didn't do. And I just want to say the truth and get it out of my chest."

In addition to the trial record, the various applications for post-conviction relief indicate the frivolous nature of Cano's claim of ineffective counsel. First, Cano asserts that the insanity defense put forth on his behalf was so impressive and substantial as to require the granting of a judgment of acquittal. Second, in the state habeas corpus proceeding Cano's counsel filed an affidavit asserting that he had spent over 300 hours on Cano's behalf and had never worked harder on behalf of any client. In response to this affidavit Cano stated that his counsel may, indeed, have spent 300 hours on his behalf, but alleged that two-thirds of that time was spent trying to convince him to plead guilty.

It is apparent to this Court that Cano does not like sitting in prison. It is likewise apparent to this Court that Cano would like even less to sit in the gas chamber. Cano's counsel, with evident effort, succeeded in sparing Cano from the latter discomforture. This Court concludes that the record conclusively shows that Cano received the effective assistance of counsel at trial.

■ (9) Cano's final contention is also directed at his counsel, alleging a denial of the effective assistance of counsel on appeal. Cano contends that at some time after the jury's verdict his counsel promised him that an appeal would be taken on grounds similar to those set forth in sections (1) through (7), *supra*, but that at some time thereafter, for reasons unknown to Cano, counsel changed his mind and raised only the insanity issue.

In an affidavit filed in the state court habeas corpus proceeding, Cano's counsel asserted that after a review of the record he conscientiously believed that the ruling on the motion for judgment of acquittal was the only issue worthy of an appeal. This Court's review of other

possible grounds for appeal supports counsel's belief in this regard.

This Court has read the briefs filed before the Arizona Supreme Court. Cano's counsel carefully argued the insanity issue, setting forth the cases supporting the view that a judgment of acquittal was required in view of the evidence introduced at Cano's trial. The record shows diligence and sound judgment on the part of counsel.

This Court concludes that the record conclusively shows that Cano received the effective assistance of counsel on appeal in accordance with the standards required under the Fourteenth Amendment to the Constitution of the United States.

The application for writ of habeas corpus is denied.