RAWLINSON, Circuit Judge,
dissenting:
I agree with the majority that if a member of the Las Vegas Metropolitan Police Department purposefully tail-gated a holdout juror on the freeway for over seven miles, because the juror was a holdout, such conduct might constitute external jury contact requiring further inquiry from the court. However, the Nevada Supreme Court determined that the juror’s assumption that the police officer targeted him as the holdout juror was speculative and unsubstantiated.[1] As recognized by the majority, the Nevada Supreme Court expressly found that “there was no evidence of an improper external influence on Juror No. 2....” Majority Opinion, p. 1219. We are bound by that factual determination absent a showing of unreasonableness. See 28 U.S.C. § 2254(d)(2).
Appellant Manuel Tarango moved for a new trial in the state court on the basis of an “outside influence on the jury process.” Nevada Supreme Court Order, p. 1. According to the Nevada Supreme Court, the holdout juror conveyed that “he thought he had been followed by a police car.” Id., p. 2. (emphasis added). Because he felt intimidated, the juror changed his vote to guilty from not guilty.
The Nevada Supreme Court also noted that a recent newspaper article attributed the juror’s change of heart to the fact that “the other jurors were able to convince the holdout to convict.... ” Id., p. 4. After discussing the juror’s email to the trial judge and the juror’s follow-up letter, the Nevada Supreme Court concluded that the trial court properly excluded from consideration the juror’s emails to the trial judge *1228 and defense counsel under N.R.S. 50.065(2) and the Nevada case of Meyer v. State, 119 Nev. 554, 80 P.3d 447 (2003).
Nevada Revised Statute 50.065(2) provides:
Upon an inquiry into the validity of a verdict or indictment:
(a) A juror shall not testify concerning the effect of anything upon the juror’s or any other juror’s mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror’s mental processes in connection therewith.
(b) The affidavit or evidence of any statement by a juror indicating an effect of this kind is inadmissible for any purpose.
In Meyer, the Nevada Supreme Court interpreted N.R.S. 50.065. Initially, the court referenced Federal Rule of Evidence 606(b), which it identified as an embodiment of “the long-standing common-law rule against admission of jury testimony to impeach a verdict ...” 80 P.3d at 454 & n. 20 (citations and internal quotation marks omitted). The court also noted that N.R.S. 50.065 was “substantially the same” as the'federal rule. Id. at n. 20.
Importantly, the Nevada Supreme Court made a distinction between juror misconduct and jury tampering. See id. at 454-55. Citing Supreme Court authority, the court identified extraneous influence as jury tampering rather than juror misconduct. See id. at 455 (citing Remmer I; see also Remmer v. United States (Remmer II), 350 U.S. 377, 76 S.Ct. 425, 100 L.Ed. 435 (1956)).
Under this framework established by its precedent, the Nevada Supreme Court ruled that, after excluding the inadmissible evidence of the juror’s state of mind and of the deliberative process of the jury, there was insufficient evidence that the juror committed misconduct. See Nevada Supreme Court Order, p. 6.
The Nevada Supreme Court then turned to the asserted extraneous influence of a police car following the juror on the freeway.[2] Admittedly, the court couched its analysis in terms of whether being followed by a police car constituted a “communication.” Id., p. 7. Nevertheless, the court ultimately concluded that “the alleged external influence in the case at bar was far too speculative to sustain a motion for a new trial.” Id. It is this conclusion that is reviewed under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).
In the last ten years, the United States Supreme Court has repeatedly rebuked this Circuit for attempting to make end-runs around the formidable obstacles to review contained in the AEDPA. As the majority acknowledges, habeas relief under the AEDPA is available only if the decision of the state court decision “was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or ... was based on an unreasonable determination of the facts in light of the evidence presented at the State Court proceeding.” Majority Opinion, p. 1220 (quoting 28 U.S.C. § 2254(d)(l)-(2)) (internal quotation marks omitted). Despite our recurring acknowledgment of this demanding standard, the Supreme Court has constantly chastised us for failing to take our professed acknowl *1229 edgment to heart. In Glebe v. Frost, — U.S.-, 135 S.Ct. 429, 431, 190 L.Ed.2d 317 (2014), the Court observed that we acknowledged its ruling, “but tried to get past it.” Similarly, in Lopez v. Smith, — U.S. -, 135 S.Ct. 1, 4, 190 L.Ed.2d 1 (2014), the Court chided this Circuit for “attempt[ing] to evade [the] barrier” established by the AEDPA.[3]
In Nevada v. Jackson, — U.S. -, 133 S.Ct. 1990, 1993, 186 L.Ed.2d 62 (2013), the Court reversed us for relying on a decision that was “very far afield.” Unfortunately, the majority opinion again strays from the narrow confínes of appropriate habeas review. Rather than reviewing the state court’s determination that proof of the alleged external influence was too speculative to constitute jury tampering, the majority grants habeas relief on the basis that the Nevada Supreme Court “improperly limited its inquiry to whether the external contact amounted to a communication,” contrary to Mattox v. United States, 146 U.S. 140, 13 S.Ct. 50, 36 L.Ed. 917 (1892). Majority Opinion, p. 1215 (internal quotation marks omitted). The majority then proceeds to “review de novo the question whether the extrinsic contact could have influenced the verdict and prejudiced Tarango.” Id. at 1215. (emphasis added). Finally, the majority remands “for an evidentiary hearing and further fact finding.” Id.
There are three problems with the majority’s analysis. The first is that Mattox is “far afield” from the dispositive issue in this case. Jackson, 133 S.Ct. at 1993. The second is that the majority gives no deference to the decision of the Nevada Supreme Court, but rather engages in impermissible appellate factfinding. The third is that no Supreme Court case supports the majority’s conclusion. I will address each problem in turn.
1. Reliance on Mattox
Mattox, a case decided in 1892, is notable not only for its age and obvious predating of the AEDPA, but for its unremarkable holding. In Mattox, the United States Supreme Court addressed the denial of a motion for a new trial made by a defendant who was tried in federal court. See 146 U.S. at 141, 13 S.Ct. 50. The basis of the motion was the reading of an inflammatory newspaper article to jurors during their deliberations, as well as prejudicial comments made to jurors by the bailiff. See id. at 143-44, 151, 13 S.Ct. 50.
The Supreme Court observed that the affidavits submitted by the jurors were properly received because they refrained from articulating “what influence, if any, the communication of the bailiff and the reading of the newspaper had upon them, but confined their statements to what was said by the one [the bailiff] and read from the other [the newspaper].” Id. at 147, 13 S.Ct. 50. The Court emphasized that the extraneous influences were “open to the knowledge of all the jury, and not alone within the personal consciousness of one.” Id. at 149, 13 S.Ct. 50.
The Court held that “[pjrivate communications, possibly prejudicial, between jurors and third persons ... or the officer in charge, are absolutely forbidden, and invalidate the verdict, at least unless their harmlessness is made to appear.” Id. at 150, 13 S.Ct. 50 (emphasis added). However, the Court also provided that any assertion of jury tampering was “subject to rebuttal by the prosecution; or contingent on proof indicating that a tampering *1230 really took place.” Id. at 149-50, 13 S.Ct. 50 (citations omitted) (emphasis added).
In Mattox, the existence of the extraneous influence was undisputed. The Supreme Court summarized the newspaper article as stating:
that the defendant had been tried for his life once before; that the evidence against him was claimed to be very-strong by those who had heard all the testimony; that the argument for the prosecution was such that the defendant’s friends gave up all hope of any result but conviction; and that it was expected that the deliberations of the jury would not last an hour before they would return a verdict ...
Id. at 150-51,13 S.Ct. 50.
The Court described the extraneous statement from the bailiff as informing the jury “that this was the third person Clyde Mattox had killed ...” Id. at 151, 13 S.Ct. 50.
Considering these facts, it is unremarkable that the Supreme Court held that the undisputed evidence of jury tampering warranted the grant of a new trial. However, nothing in the holding or reasoning of Mattox supports the majority’s disregard of the state court’s determination that Tarango’s evidence of jury tampering was speculative. The majority cites Mat-tox for the proposition that the trial court was compelled to “consider the prejudicial effect of any external contact that has a ‘tendency1 to influence the verdict....” Majority Opinion, p. 1221. However, the majority’s analysis conveniently omits the discussion in Mattox of the undisputed evidence that established, without challenge, the existence of the external contact. See Mattox, 146 U.S. at 150-51, 13 S.Ct. 50. The majority also elides the language in Mattox explaining that relief is “contingent on proof indicating that a tampering really took place.” Id. at 149-50, 13 S.Ct. 50 (citations omitted) (emphasis added). Unlike in Mattox, the evidence submitted by Tarango was disputed. Indeed, the prosecutor denied providing the identity of the holdout juror to anyone at the Police Department. Having reviewed the testimony presented to the trial court, the Nevada Supreme Court agreed with the trial court that the evidence of jury tampering was speculative in the absence of evidence that the identity of the holdout juror was provided to anyone in the Police Department. This determination was entirely consistent with the requirement in Mattox of proof that jury tampering actually occurred.
It cannot be fairly said that Mattox compels consideration of the prejudicial effect of speculative evidence of jury tampering. Rather, as with other factual determinations, the existence of jury tampering is a matter to be resolved by the trial court. See Uttecht v. Brown, 551 U.S. 1, 17, 20, 127 S.Ct. 2218, 167 L.Ed.2d 1014 (2007) (explaining that “it is the trial court’s ruling that counts” due to its ability to perceive the demeanor of the witnesses). The trial court conducted an evidentiary hearing, and determined that the allegation of jury tampering was “vague” and “ambiguous” and “nonspecific.” The Nevada Supreme Court’s affirmance of the trial court’s determination that the evidence of jury tampering was “speculative” was not contrary to Mattox because the holding of Mattox is “far afield” from the facts of this case. Jackson, 133 S.Ct. at 1993.
The majority also relies on our decision in United States v. Armstrong, 654 F.2d 1328, 1331-33 (9th Cir.1981). However, that case is more helpful to the dissent than to the majority. In that case, a juror reported that her husband had taken two calls using obscene language and directing the husband to “[tjell your wife to stop hassling my brother-in-law at court.” Id. at 1331. On direct appeal, we determined that an outside influence must be present *1231 to raise the presumption of prejudice. See id. at 1332. That is where the majority’s analysis falters, because the Nevada state courts never found that an external influence was exerted upon Juror No. 2. At most, the courts assumed the juror was followed, but did not link the asserted tailgating to Juror No. 2’s status as a holdout juror. Tail-gating an individual who is not known to be a holdout juror, or a juror at all, would not have a “tendency” to influence the jury’s verdict, and would not prompt a prejudice inquiry. Mattox, 146 U.S. at 150-51, 13 S.Ct. 50.[4]
The other cases cited by the majority as clearly established Federal law are similarly “far afield.” In Remmer I, 347 U.S. at 228-29, 74 S.Ct. 450, unlike in this case, the allegations of jury tampering were unchallenged by the prosecution, yet the district court denied the motion for a new trial. On direct appeal, the United States Supreme Court remanded the case for a hearing on prejudice. See id. at 229-30, 74 S.Ct. 450. Not only is this case “far afield” because it did not involve habeas review. See Cullen v. Pinholster, 563 U.S. 170, 131 S.Ct. 1388, 1410, 179 L.Ed.2d 557 (2011) (clarifying that a case offers no guidance for habeas review under the AEDPA if the court did not apply AEDPA deference); see also Harrington v. Richter, 562 U.S. 86, 101, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011). The allegations were also unchallenged, and the trial court failed to conduct a hearing. See Remmer I, 347 U.S. at 228-29, 74 S.Ct. 450; see also Parker v. Gladden, 385 U.S. 363, 364-65, 87 S.Ct. 468, 17 L.Ed.2d 420 (1966) (allegations unrefuted).
In Smith v. Phillips, 455 U.S. 209, 215, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982), the Supreme Court held that “the remedy for allegations of juror partiality is a hearing in which the defendant has the opportunity to prove actual bias.... ” That is precisely what occurred in the state court. Tarango had the opportunity to prove the allegations, and the state courts determined that his proof was inadequate. That should be the end of the matter under habeas review. See Premo v. Moore, 562 U.S. 115, 131, 131 S.Ct. 733, 178 L.Ed.2d 649 (2011).
2. Failure to defer to the Nevada Supreme Court
The Supreme Court has consistently and repeatedly stressed our obligation on ha-beas review to defer to the rulings and factual determinations made by the state courts. See Uttecht, 551 U.S. at 10, 127 S.Ct. 2218 (“By not according the required deference, the Court of Appeals failed to respect the limited role of federal habeas relief in this area prescribed by Congress and by our cases.”); see also Jackson, 133 S.Ct. at 1994 (referencing the “substantial deference” required by AEDPA); Cavazos v. Smith, — U.S.-, 132 S.Ct. 2, 7, 181 L.Ed.2d 311 (2011) (mentioning Supreme Court opinions “highlighting the necessity of deference to state courts in § 2254(d) habeas cases”); Pinholster, 131 S.Ct. at 1398 (describing the “highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt”) (citation omitted); Richter, 562 U.S. at 104, 131 S.Ct. 770 (reversing this Circuit for “a lack of deference to the state court’s determination and an improper intervention in state criminal processes, contrary to the purpose and mandate of AEDPA and to the now well-settled meaning and function of habeas corpus in the federal system”).
*1232 The trial court determined that Tarango failed to adequately establish that jury tampering occurred, due to the speculative, vague, ambiguous and disputed nature of the allegations that a police officer identified Juror No. 2 as the holdout juror and tail-gated that juror for over seven miles. Although the trial court could have credited the juror’s version of events over the prosecution’s rebuttal, it did not do so. Rather than deferring to the state court’s determination, the majority engaged in its own factfinding, stating that: “[W]e have little trouble concluding that the contact that the Nevada Supreme Court assumed occurred had enough potential for prejudice to cross Mattox’s low threshold....” Majority Opinion, p. 1224.[5]
The majority’s disregard of the state court’s determination and substitution of its alternate conclusion strays from our appointed role on habeas review. See Richter, 562 U.S. at 104, 131 S.Ct. 770.
3. No supporting Supreme Court authority
Under the rule expressed by the majority, a trial court would have to conduct a prejudice analysis whenever an allegation of jury tampering is made, even if the trial court ultimately determines that the allegation is unsubstantiated. See Majority Opinion, p. 1223 n. 9 (discounting the trial court’s determination that the allegation of jury tampering was “ambiguous, vague and nonspecific”) (internal quotation marks omitted).
No Supreme Court precedent supports the majority’s rationale. As previously noted, Remmer I and Mattox involved undisputed evidence of extraneous influence. See Remmer I, 347 U.S. at 229, 74 S.Ct. 450; see also Mattox, 146 U.S. at 151, 13 S.Ct. 50. Smith merely stands for the proposition that the defendant asserting jury tampering must be afforded a hearing. See 455 U.S. at 215, 102 S.Ct. 940. It is without question that Tarango was afforded a hearing. So we are left with the majority’s premise untethered to any controlling Supreme Court authority. Rather, Mattox expressly points in the other direction, requiring proof that jury tampering actually occurred. See 146 U.S. at 149-50, 13 S.Ct. 50.[6]
The Supreme Court has addressed the tendency of this Circuit to reach beyond the confínes of Supreme Court precedent. In Lopez, 135 S.Ct. at 4, the Supreme Court scolded us for relying on “older cases that stand for nothing more than [a] general proposition.” Here, the majority similarly cites older cases standing for the general proposition that a defendant is entitled to a hearing when jury tampering is asserted, and a determination of prejudice when jury tampering has been established. See Remmer I, 347 U.S. at 228-29, 74 S.Ct. 450; see also Smith, 455 U.S. at 215, 102 S.Ct. 940. Just as in Lopez, “[n]one of [the Supreme Court] decisions that the [majority] cited addresses, even remotely, the specific question presented by this case.” 135 S.Ct. at 4 (citations omitted). The specific question in this *1233 case is whether the trial court is required to conduct a prejudice inquiry when that court has determined that the allegations of jury tampering are “ambiguous, vague and nonspecific.” The majority has cited no Supreme Court case addressing this specific question.[7] Consequently, the Nevada Supreme Court decision could not have been contrary to federal law under the AEDPA. See Knowles v. Mirzayance, 556 U.S. 111, 122, 129 S.Ct. 1411, 173 L.Ed.2d 251 (2009) (“With no Supreme Court precedent establishing [the standard adopted by the panel], habeas relief cannot be granted pursuant to § 2254(d)(1) based on such a standard.... ”).
CONCLUSION
I have no quarrel with the notion that we must faithfully adhere to the panoply of procedural protections afforded the criminal defendant. However, on habeas review, we are cabined by the deference owed to state court decisions and by the requirement that relief be granted only if the decision of the state court was contrary to established Supreme Court authority. Mattox is not that authority in this case.
The Supreme Court has repeatedly reminded us that the standard for relief on habeas review “is difficult to meet ... because it was meant to be.... ” Richter, 562 U.S. at 102, 131 S.Ct. 770. Federal habeas review “is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal.... ” Id. (citation and internal quotation marks omitted) (emphasis added). Rather than applying the “difficult” habeas standard, at best the majority engages in “ordinary error correction.” Id.
Because the majority cites no applicable Supreme Court authority to support its grant of habeas relief, because the majority completely disregards the findings of the state courts, and because the majority fails to adhere to the confines of habeas review, I respectfully dissent.

. The majority mischaracterizes my description of the state courts’ factual determination. See Majority Opinion, p. 1223 n. 9. The state court did not discredit, and I did not describe the state courts' finding as discrediting, Juror No. 2's statement that he “thought he was followed by a police car.” Nevada Supreme Court Order, p. 2. What the state courts did discredit, and what I did describe the state courts as finding, was a lack of substantiation that the police car was following Juror No. 2 on the freeway because he was a holdout juror. There was insufficient evidence in the state courts’ view that a tail-gating police officer in rush-hour morning traffic constituted an improper external influence. Rather than focusing on whether Tarango submitted evidence of an external- influence, see, e.g., Mattox v. United States, 146 U.S. 140, 141-44, 13 S.Ct. 50 (inflammatory newspaper article read to the jury); Remmer v. United States (Remmer I), 347 U.S. 227, 228, 74 S.Ct. 450 (1954) (juror told he could profit from favorable verdict), the majority concludes that the existence of police tail-gating during rush hour traffic, and nothing more, compelled the state court to conduct a prejudice inquiry.

. The majority takes judicial notice of a road-map of Las Vegas, Nevada to approximate the distance involved as 7.5 miles. See Majority Opinion, p. 1218 n. 5. The majority should have also taken notice that US-95 is the only freeway that accesses downtown from east on Tropicana Boulevard, and therefore it would not be unusual for a police officer to take that route to police headquarters downtown.

. The majority makes light of the many rebukes we have received from the Supreme Court for ignoring the demanding standard under which we review habeas cases. See Majority Opinion, p. 1225 n. 14. I doubt the Supreme Court will be amused.

. Curiously, the majority opinion implies that a newspaper article is not a “communication.” Majority Opinion, p. 1221. Nothing could be further from the truth. See Hilliard v. Arizona, 362 F.2d 908, 909 (9th Cir.1966) (noting that the Judge admonished jurors “to avoid out of court communications ... including newspaper articles”).

. The majority completely ignores the fact that the state court never found that the police officer was aware of the identity of the holdout juror. For that reason, the state court merely assumed that there was a tail-gating, not that there was "external contact.” The assumption of "external contact” is made by the majority.

. The majority accuses me of missing the point, see Majority Opinion, p. 1224 n. 10, but it is the majority that is off-base. The, state courts NEVER "presumed an unauthorized external contact with a juror had occurred.” Id. The most the state courts assumed was that a police car tail-gated Juror No. 2 during morning rush-hour traffic on the only freeway that accesses downtown from east Tropicana Boulevard. The majority presumes the rest.

. The majority takes issue with, and in the process implicitly concedes, my point that the Supreme Court cases relied upon by the majority "are insufficiently specific.” Majority Opinion, p. 1225 n. 12. In the very next sentence, the majority seeks to "extend” the standards set forth in "Mattox and its progeny.” Id. However, the Supreme Court has expressly instructed us against extending its precedent beyond its specific holdings. See White v. Woodall, - U.S. -, 134 S.Ct. 1697, 1706, 188 L.Ed.2d 698 (2014) (“[I]f a habeas court must extend a rationale before it can apply to the facts at hand, then by definition the rationale was not clearly established ... ”) (citation and internal quotation marks omitted).