Filed 1/23/14  P. v. Blanchard CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H038120 |
| Plaintiff and Respondent, | (Santa Clara County Super. Ct. No. C1077310) |
| v. | |
| MICHAEL PATRICK BLANCHARD, | |
| Defendant and Appellant. | |

Defendant Michael Patrick Blanchard appeals after conviction, by jury trial, of one count of attempted criminal threat (Pen. Code, §§ 422, 664[1]) and two counts of assault with a deadly weapon (§ 245, subd. (a)(1)).  He was placed on probation for three years and ordered to serve a one-year county jail term as a condition of probation.

On appeal, defendant contends:  (1) the trial court erred by reopening the case for an instruction and argument on attempted criminal threat; (2) the trial court erred by excluding documentary evidence of a witness's prior conviction; and (3) trial counsel was ineffective for failing to object when the prosecution introduced evidence that defendant's credit card had been declined.  For the reasons stated below, we will affirm the judgment.

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

## BACKGROUND

### A.      Incident at the Brittania Arms

On April 4, 2010, Tiffani Sturges was at the Brittania Arms on Almaden Expressway. She sat at the bar while waiting for a friend. Defendant came over and sat near Sturges, then struck up a conversation with her.

During their conversation, defendant claimed he was a social worker who made $80,000 per year. Defendant got angry when Sturges told him she did not believe he made that much money. He then told her, "you need to, like, suck my dick, or I'm going to slit your throat." Sturges "kind of laughed" and responded, "No, I'm not." Defendant said, "I can make you." Sturges "didn't think he was serious" and told him, "You're ridiculous."

Defendant repeated his threat, saying, "I'm going to follow you home and I'm going to make you suck my dick and I am going to slit your throat." Sturges responded, "You don't know where I live." Defendant said, "I do know where you live. I know where your family lives."

Defendant also told Sturges, "I have a knife." Sturges responded, "Oh, really?" Defendant then took out a Leatherman multi-purpose tool, held it underneath the bar, and opened the knife implement. Sturges was "stunned." Defendant repeated his threat. Sturges told him, "don't threaten me," saying she had "cops" in her family. Defendant replied, "I don't care. I am a Hell's Angel."

Sturges felt "pretty terrified," but she did not yell out for help. She was "in shock," and she thought defendant might respond by stabbing her. She did not try to leave the bar, fearing defendant might follow her home as he had threatened. Instead, she tried to think of a way to get help without attracting a lot of attention.

When defendant got up to use the restroom, he told Sturges he would follow her if she left. Sturges remained at the bar but asked the bartender for her bill. She then wrote a note on the back of the receipt, indicating that defendant had threatened her.

2

Nicholas Stagnaro, the manager of the Brittania Arms, read Sturges's note. He told two of the security guards, Joe Anderson and Nicholas Lancaster, about the threat. Anderson and Stagnaro approached defendant and asked him to step outside with them. After speaking with defendant and giving him a "verbal warning," they allowed him to reenter the bar.

Back in the bar, defendant was looking at Sturges, "staring her down." Anderson and Stagnaro therefore told defendant, "it's time to call it a night" and asked him to leave. Defendant exited, but he became "agitated" once he was outside. He repeatedly told Anderson to "come around the corner," saying "he had something for him." Lancaster told defendant to leave.

From about 15 feet away, defendant threw the opened Leatherman tool at Anderson and Lancaster. The tool went in between the two security guards, both of whom had to jump out of the way. The tool landed four buildings down from the Brittania Arms. Defendant then ran off.

### B. Defense Case

Detective Carlos Melo testified that he viewed two different videotapes prepared from the Brittania Arms's security cameras. Neither tape showed defendant throwing the tool, as both tapes stopped before that part of the incident.

Four people who worked with defendant and/or socialized with him outside of work testified to his non-violent character. None of the four had ever seen how defendant reacted after being rejected by a woman.

### C. Procedural History

Defendant was charged, by information, with two counts of criminal threat (§ 422; counts 1 & 2) and two counts of assault with a deadly weapon (§ 245, subd. (a)(1); counts 3 & 4). Count 1 charged defendant with making a threat to Sturges. Count 2 charged him with making a threat to Anderson. Count 3 charged defendant with assaulting Anderson. Count 4 charged him with assaulting Lancaster. The prosecutor moved to

3

dismiss count 2 during trial, noting that Anderson had moved out of state and would not be testifying.

The jury returned its verdicts on January 13, 2012. In count 1, the jury found defendant not guilty of criminal threat but guilty of a lesser included offense: attempted criminal threat. The jury convicted defendant of assault with a deadly weapon (§ 245, subd. (a)(1)) as charged in counts 3 and 4.

## DISCUSSION

### A. *Reopening/Attempted Criminal Threat*

Defendant contends the trial court erred by reopening the case, during jury deliberations, for an instruction and argument on attempted criminal threat. He claims that the process effectively lessened the prosecution's burden of proof, deprived him of due process, and encouraged the jury to reach a verdict.

#### 1. **Proceedings Below**

As noted above, in count 1, defendant was charged with making a criminal threat in violation of section 422. Initially, the trial court did not give a lesser included offense instruction for count 1, and neither of the parties requested such an instruction.

During closing arguments, the defense focused on Sturges's credibility. The defense argued that "there was no threat that was made," but also that someone who was in sustained fear would not have stayed in the bar and continued to drink alcohol.

The jury deliberated for 45 minutes on January 10, 2012 and all day on January 11, 2012. After about one hour and 25 minutes of deliberations on January 12, 2012, the jury submitted the following request to the court: "Please provide [a] more clear and specific definition of sustained fear with examples."

The trial court told the parties it had prepared a response that referred the jury back to some of the instructions. The court further noted that during discussions about the jury's question, the prosecutor had "raised the issue that the court should have

4

instructed on attempted criminal threat . . . and requested that the court give that instruction now." Defendant had objected on the basis that "substantial evidence did not support giving the instruction."

The trial court indicated it had reevaluated Sturges's testimony and "realized that substantial evidence would support the giving of an instruction for attempting to make a criminal threat . . . as a lesser included offense to count one." The court further noted that it "should have instructed on that crime initially" and that its failure to do so had been an "oversight." The court determined that it would give the instruction and then give the attorneys the opportunity to present argument on the issue.

Defendant reiterated his argument that substantial evidence did not warrant the instruction, and he objected "on due process grounds."

The trial court then instructed the jury that "attempt to make a criminal threat" was a lesser included offense to count 1, and it instructed the jury on the elements of that offense. The trial court also reinstructed the jury with CALCRIM No. 220 (specifying that the People have the burden of proving the defendant guilty beyond a reasonable doubt, and defining reasonable doubt), and it reminded the jurors "not to consider anything I said or did during the trial as an indication of what I think about the facts, the witnesses, or what your verdict should be."

The attorneys then presented short arguments. The prosecutor argued that if defendant "made the threat with the intent but it didn't scare her or it didn't scare her for a sustained period of time he's guilty of the lesser." The prosecutor further argued, "However, in this case you heard from Miss Sturges that she did hear the threat and she was scared." The prosecutor argued that Sturges remained in fear until defendant was gone and the police arrived: "That's sustained fear."

Defendant responded by telling the jury it was essentially being given an opportunity to reach a "compromise" but that it did not "have to take that." Defendant

5

also argued that Sturges was not in sustained fear, noting that she had remained at the bar and continued to drink after the alleged threat.

Following the additional instructions and argument on January 12, 2012, the jury deliberated briefly and heard readback of Sturges's testimony. The jury returned for additional deliberations at 1:40 p.m. on January 13, 2012, and it reached its verdicts at 2:43 p.m. that day, finding defendant not guilty of criminal threat but guilty of attempted criminal threat.

### 2. Analysis

Defendant argues that it was inappropriate to give the instruction on attempted criminal threat in response to the jury's question about the meaning of the term "sustained fear." He contends the trial court, in effect, "impermissibly dictated to the jury that the solution to their question" was to convict him of attempted criminal threat. According to defendant, the "late instruction" (1) reduced the prosecution's burden of proof, (2) denied him due process of law and fair notice, and (3) improperly encouraged deadlocked jurors to reach a verdict.

Similar late instructions were challenged in *People v. Ardoin* (2011) 196 Cal.App.4th 102 (*Ardoin*). In that case, defendant Ardoin was charged with first degree murder and prosecuted "as the direct perpetrator," while his codefendant was prosecuted under "aiding-and-abetting and felony-murder theories." (*Id.* at p. 123.) The original jury instructions on aiding and abetting and felony murder referred only to the codefendant. However, "the evidence presented at trial was also susceptible to interpretations that both defendants directly and conjointly participated in the robbery and murder of the victim, or that either of them may have perpetrated the robbery and aided and abetted the other to commit the murder." (*Ibid.*) During deliberations, the jury asked if it could find defendant Ardoin guilty under "a theory of felony murder, or otherwise," if it believed he was not the direct perpetrator. (*Id.* at p. 124.) Over defense objection, the trial court replaced the original jury instructions on felony murder with instructions

6

that referred to both defendants. The court did not, however, reopen arguments after giving the revised instructions.

The *Ardoin* court determined that the trial court did not abuse its discretion by giving the "supplemental instruction[s] on felony murder following closing argument." (*Ardoin, supra,* 196 Cal.App.4th at p. 127.) The court noted that the trial court "had the statutory obligation 'to provide the jury with information the jury desires on points of law' " as well as the duty "to instruct the jury on the law relevant to the issues raised by the evidence." (*Id.* at pp. 127-128.) However, the trial court had erred by failing to reopen the case to allow defendant Ardoin the opportunity to "offer rebuttal argument" in order to "prevent unfair prejudice." (*Id.* at p. 129.) An opportunity to argue about the new theory should have been given to effectuate the defendant's " ' "constitutional rights to counsel and to due process of law." ' " (*Ibid.*)

Nevertheless, the court determined that no actual prejudice had resulted. (*Ardoin, supra,* 196 Cal.App.4th at p. 131.) The defendant had received notice of his potential culpability under the felony-murder rule "through the first degree murder charge and evidence presented at trial." (*Ibid.*) Further, defense counsel was aware that felony-murder principles were at issue in the case, but he chose to argue that Ardoin was "not present at all when the murder occurred." (*Id.* at p. 132.) Thus, the late instruction "did not introduce any new and different theory or factual elements into the case to be contested by the defense." (*Id.* at p. 133.)

In this case, the trial court did not abuse its discretion by instructing the jury on attempted criminal threat after the jury asked a question about the meaning of "sustained fear." The trial court had the duty to provide relevant information in response to the jury's question (see *Ardoin, supra,* 196 Cal.App.4th at p. 127), and as defendant acknowledges, the trial court had the obligation to give " ' "instructions on lesser included offenses when the evidence raises a question as to whether all of the elements of the charged offense were present." ' " (*People v. Valdez* (2004) 32 Cal.4th 73, 115.)

7

The late instruction on attempted criminal threat did not reduce the prosecution's burden of proof. Although the jury did not need to find all of the elements of criminal threat in order to convict defendant of attempted criminal threat (see *People v. Toledo* (2001) 26 Cal.4th 221, 231), the jury was still required to find all of the elements of attempted criminal threat beyond a reasonable doubt. The trial court, in fact, specifically repeated the reasonable doubt instruction to ensure the jury understood this.

The late instruction also did not deprive defendant of due process or fair notice. First, instructions on lesser necessarily included offenses do not surprise either party "because, by definition, the stated charge gives notice to both that all the elements of any such offense are at issue." (*People v. Birks* (1998) 19 Cal.4th 108, 112.) Second, under the circumstances here, the late instruction did not unfairly surprise defendant. Defendant had initially argued that the jury should not convict him of count 1 because "there was no threat that was made," *and* because someone who was in sustained fear would not have stayed in the bar and continued to drink alcohol. Trial counsel did not have to make an inconsistent argument following the attempted criminal threat instruction—he could have simply reiterated his prior argument that "there was no threat that was made."

Last, the late instruction did not improperly encourage the jury to reach a verdict. Defendant cites to *People v. Gainer* (1977) 19 Cal.3d 835, 852 (disapproved of by *People v. Valdez* (2012) 55 Cal.4th 82, 163), in which the court held that "it is error for a trial court to give an instruction which either (1) encourages jurors to consider the numerical division or preponderance of opinion of the jury in forming or reexamining their views on the issues before them; or (2) states or implies that if the jury fails to agree the case will necessarily be retried." Here, however, the instruction did neither of those prohibited items; it simply advised the jury it could consider convicting defendant of attempted criminal threat, and it informed the jury of the elements of that offense. Moreover, the instruction was accompanied by the trial court's admonition "not to consider anything I

8

said or did during the trial as an indication of what I think about the facts, the witnesses, or what your verdict should be."

In his reply brief, defendant contends his case is similar to *People v. Stouter* (1904) 142 Cal. 146 (*Stouter*). In *Stouter,* the defendant was charged with committing a lewd or lascivious act upon a child—specifically, insertion of a finger into the child's vagina. (*Id.* at p. 147.) The trial court originally instructed the jury that in order to find the defendant guilty, it had to find "beyond a reasonable doubt, that the said defendant did insert a finger" into the child's vagina. (*Ibid.*) After some deliberations, the jury asked if a guilty verdict required that the defendant have inserted his finger into the vagina, and whether an " 'attempt to insert the finger in the vagina' " would be sufficient. (*Id.* at p. 148.) The trial court referred the jury back to the original instructions, and the jury deliberated again. The jurors then returned and told the trial court that they "could not agree." (*Id.* at p. 149.) After conversing with the jurors about their individual opinions, the trial court "for the first time, gave the jury a new instruction, to the effect that they might find the defendant guilty of an 'attempt' to commit the crime charged." (*Ibid.*) "The jury then retired again and returned the verdict convicting defendant of the attempt." (*Ibid.*)

The *Stouter* court found that the late attempt instruction had interfered with the defendant's right to a fair trial. The court noted that the late instruction was "clearly an afterthought suggested by the statements of the jurors" and that it was "apparently intended to help them, not generally to arrive at a verdict, but to arrive at some sort of a verdict of guilty." (*Stouter, supra,* 142 Cal. at p. 150.) In addition, the court found that the evidence "was not sufficient to support a verdict of guilty of an attempt." (*Id.* at pp. 150-151.)

Significantly, issued in 1904, *Stouter* predated the recognition of the rule that a trial court must instruct sua sponte on lesser included offenses as part of its duty to instruct sua sponte on the general principles of law governing the case. (See *People v.*

9

*Hood* (1969) 1 Cal.3d 444, 449-450 [overruling earlier cases to the extent they held that it is not error for a trial court to fail to instruct on lesser included offenses on its own motion, even though such an instruction would be supported by the evidence].) Now, it is well-settled that " '[t]he obligation to instruct on lesser included offenses exists even when as a matter of trial tactics a defendant not only fails to request the instruction but expressly objects to its being given. [Citations.] Just as the People have no legitimate interest in obtaining a conviction of a greater offense than that established by the evidence, a defendant has no right to an acquittal when that evidence is sufficient to establish a lesser included offense. [Citation.]' [Citations.]" (*People v. Breverman* (1998) 19 Cal.4th 142, 154-155 (*Breverman*).)

*Stouter* is also distinguishable from the instant case, where no argument is being made that the lesser included offense instruction was inappropriate based on the evidence introduced at trial. This case thus contrasts with *Stouter*, where the court found that the evidence was not sufficient to find the defendant guilty of an attempt. (See *Stouter, supra,* 142 Cal. at pp. 150-151.)

Defendant also relies on the Ninth Circuit's opinion in *Sheppard v. Rees* (9th Cir. 1989) 909 F.2d 1234 (*Sheppard*) to support his contention that his "Sixth Amendment[] right to adequate notice was violated." In *Sheppard*, the defendant was charged with murder and "[t]he case was tried before a jury on the theory that the killing was premeditated and deliberate." (*Id.* at p. 1235.) "At no time . . . was the concept of felony-murder raised, directly or indirectly," but on the day set for closing arguments, the prosecutor asked for instructions on robbery and felony murder, and the trial court agreed to give those instructions. (*Ibid.*)

The State of California eventually conceded that under the circumstances of the case, Sheppard was " 'denied adequate notice and opportunity to prepare to defend against a charge of felony-murder.' " (*Sheppard, supra,* 909 F.2d at p. 1236.) The Ninth Circuit agreed that the government had " 'ambushed' the defense with a new theory of

10

culpability," noting that "[d]efense counsel would have added an evidentiary dimension to his defense designed to meet the felony-murder theory had he known at the outset what he was up against." (*Id.* at p. 1237.)

We conclude *Sheppard* is inapposite as it did not involve an instruction on a lesser included offense. As noted above, the trial court has a sua sponte duty to give lesser included offense instructions, even when neither party requests such an instruction. (*Breverman, supra,* 19 Cal.4th at pp. 154-155.) Giving an instruction on a lesser included offense did not " 'ambush[]' the defense with a new theory of culpability." (*Sheppard, supra,* 909 F.2d at p. 1237.) As previously discussed, one of the defense theories was that "there was no threat that was made," and thus, giving the attempt instruction did not require that the defense add a further "evidentiary dimension" to its case. (*Ibid.*)

In sum, under the circumstances here, we find no error in the trial court's decision to instruct the jury on the lesser included offense of attempted criminal threat during deliberations.

**B.** **Exclusion of Documentary Evidence of Sturges's Prior Conviction**

Defendant contends the trial court erred by excluding documentary evidence of Sturges's prior conviction for petty theft.

### 1. Proceedings Below

During trial, the prosecutor discovered that Sturges had a 2011 conviction for petty theft where the value of the property taken was under $50, an infraction. (See § 490.1.) The prosecutor objected to the use of that conviction for impeachment, while defendant advocated for it to be admitted.

The trial court indicated that it would allow Sturges to be impeached with the conduct underlying her conviction, but not with documentary evidence of the conviction. Defendant indicated he had a "certified court order" showing that Sturges had pleaded no contest in the case.

11

The trial court reviewed the documentation, then ruled that defendant could ask Sturges whether she committed a petty theft and whether she had suffered an infraction conviction for petty theft. The trial court indicated defendant might be able to use the documentation to impeach Sturges if she denied the conduct and/or conviction.

On direct examination, the prosecutor asked Sturges whether she had pleaded no contest to a criminal charge of petty theft in 2011. Sturges admitted that she had suffered the conviction and that she had been "stealing something." On cross examination, defendant asked Sturges to confirm that she "pled no contest to an infraction." Sturges said, "Yes."

At the end of trial, defendant offered documentation of Sturges's conviction into evidence, describing it as a certified copy of a minute order. He argued that the minute order should be judicially noticed, and that it "should go to the jury." The prosecutor objected, arguing that Sturges had "fully admitted" the crime.

The trial court refused to admit the minute order, ruling: "One, it's hearsay. [¶] Two, she testified that she had the petty theft conviction. [¶] It simply serves no purpose. [¶] And I don't think there's any authority for admitting that."

### 2. Analysis

Defendant first contends the trial court erred by finding that the minute order was hearsay. The Attorney General does not dispute this point. Although the documentation defendant offered is not part of the record, a certified copy of a minute order showing a conviction is typically not made inadmissible by the hearsay rule. (See Evid. Code, § 452.5, subd. (b); *People v. Duran* (2002) 97 Cal.App.4th 1448, 1460-1461.)

Defendant next contends that the trial court erred by finding that admission of the minute order would "serve[] no purpose." Acknowledging that Sturges admitted suffering the prior conviction, he contends: "Simply because a person has testified to the facts of the exhibit does not make that exhibit unnecessary." Respondent contends the

12

minute order "would have been cumulative" to Sturges's testimony and that the trial court therefore did not err in excluding it.

"We review for abuse of discretion a trial court's rulings on the admissibility of evidence. [Citations.]" (*People v. Harris* (2005) 37 Cal.4th 310, 337.) Here, we discern no abuse of discretion. The trial court could reasonably find that, given Sturges's testimony admitting that she had pleaded no contest to a criminal charge of petty theft, the minute order documenting that infraction would have added nothing to the evidence. (See *People v. Kronemyer* (1987) 189 Cal.App.3d 314, 350 [documentary evidence was cumulative of expert testimony]; *People v. Thuss* (2003) 107 Cal.App.4th 221, 234 [photographs were cumulative of other evidence relating to witness's credibility]; Evid. Code, § 352.) Moreover, because the minute order was merely cumulative of Sturges's testimony, defendant fails to show a reasonable probability that the trial court's ruling, even if error, affected the outcome of the case. (See *People v. Kronemyer, supra,* at p. 350*.; People v. Watson* (1956) 46 Cal.2d 818, 836-837.)

### C.    *Ineffective Assistance of Counsel/Credit Card*

Defendant contends trial counsel was ineffective for failing to object when the prosecution introduced evidence that defendant's credit card had been declined.

#### 1.    **Proceedings Below**

The evidence about defendant's credit card came in through the testimony of Stagnaro, the manager of the Brittania Arms. The prosecutor asked Stagnaro how he was able to give the police identifying information about defendant. Stagnaro mentioned that defendant had "left his tab open with his – his credit card – was declined, I believe." The prosecutor then introduced a copy of the "credit card declined slip," along with a copy of defendant's bill. Stagnaro explained that defendant had opened a tab and left his credit card at the bar. After the incident, they had "swiped the card and it was declined." Stagnaro further explained that credit cards are typically declined for "insufficient funds"

13

or because "something is wrong with the card." Defendant did not object to this evidence.

### 2. Analysis

A defendant who presents a claim of ineffective assistance of counsel on appeal must show that the performance of his or her trial counsel was deficient, and that he or she was prejudiced thereby. (*Strickland v. Washington* (1984) 466 U.S. 668, 686-687 (*Strickland*); *People v. Anderson* (2001) 25 Cal.4th 543, 569.) "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." (*Strickland*, *supra*, at p. 694.) "Thus, to be entitled to reversal of a judgment on grounds that counsel did not provide constitutionally adequate assistance, the petitioner must carry his [or her] burden of proving prejudice as a 'demonstrable reality,' not simply speculation as to the effect of the errors or omissions of counsel. [Citation.]" (*People v. Williams* (1988) 44 Cal.3d 883, 937 (*Williams*).)

"Reviewing courts defer to counsel's reasonable tactical decisions in examining a claim of ineffective assistance of counsel [citation], and there is a 'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.' [Citation.]" (*People v. Lucas* (1995) 12 Cal.4th 415, 436-437.) "We have repeatedly stressed 'that "[if] the record on appeal sheds no light on why counsel acted or failed to act in the manner challenged[,] . . . unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation," the claim on appeal must be rejected.' [Citations.]" (*People v. Mendoza Tello* (1997) 15 Cal.4th 264, 266-267.)

Defendant contends that trial counsel could not have had a tactical reason for failing to object to the evidence of his credit card being declined. He contends the evidence "was not relevant to the issue of whether defendant threatened or assaulted

14

anyone on the night of April 4, 2010." Defendant contends the evidence served only to defame his character and that as such, it was inadmissible pursuant to Evidence Code section 1101.

Even assuming that reasonable trial counsel would have objected to Stagnaro's testimony about defendant's credit card being declined, defendant fails to explain how, "but for counsel's unprofessional error[], the result of the proceeding would have been different." (*Strickland*, *supra*, 466 U.S. at p. 694.) Having a credit card declined is not the type of damaging character evidence that can cause serious prejudice. (Cf. *People v. Albarran* (2007) 149 Cal.App.4th 214, 230 [certain "gang evidence was extremely and uniquely inflammatory, such that the prejudice arising from the jury's exposure to it could only have served to cloud their resolution of the issues"], fn. omitted; *People v. Parsons* (1984) 156 Cal.App.3d 1165, 1171 [evidence of a prior arrest "is not as prejudicial as evidence of a prior conviction"].) Defendant fails to explain how evidence that he may have had insufficient funds or a defective credit card was likely to affect the jury's view of the case. Under the circumstances, defendant has failed to "carry his burden of proving prejudice as a 'demonstrable reality.' " (*Williams, supra,* 44 Cal.3d at p. 937.)

# DISPOSITION

The judgment is affirmed.

_____

BAMATTRE-MANOUKIAN, ACTING P.J.

WE CONCUR:

_____

MÁRQUEZ, J.

_____

GROVER, J.