Filed 7/3/14  P. v. Flores CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, | B248130 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. KA096539) |
| v. | |
| CHRISTOPHER FLORES, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. George Genesta, Judge.  Affirmed.

Mark S. Devore, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Paul M. Roadarmel, Jr., and Allison H. Chung, Deputy Attorneys General, for Plaintiff and Respondent.

_____

A jury found defendant and appellant Christopher Flores guilty of one count of first degree residential burglary. On appeal, defendant contends (1) the trial court erred in excluding evidence that he has a twin brother, and (2) the trial court denied him his right to due process and notice of the charges against him when it instructed the jury on an aiding and abetting theory, over a defense objection. We find no error.

## FACTUAL AND PROCEDURAL BACKGROUND

In the afternoon on July 6, 2011, Aurora Lopez was watering the front lawn at her home in Azusa. She noticed a car parked across the street. A man she had never seen before was inside the car. The man sat in the car for about 30 minutes; Lopez periodically made eye contact with him. He seemed nervous. After a while, the man drove away. Lopez later identified defendant from a photographic lineup as the man she had observed in the car.

Later on July 6, Minette Espinoza and her husband drove down the street where Lopez had noticed defendant. Espinoza was a passenger in the car. As they passed by the home of their neighbor, Dennis Davis, Espinoza saw two young men standing outside Davis's house. Espinoza had never before seen the men in the neighborhood. They both had backpacks. Espinoza told her husband to slow down because she thought the situation was very suspicious. The two men were standing at the front door, looking around. Espinoza later identified defendant as one of the two men after reviewing a photographic lineup. She also identified Paul Flores as the second man.[1]

Davis was in Arizona at the time. Before leaving for Arizona, Davis had locked the house and left his mint-condition 2000 BMW Roadster in the garage. At some point on July 6, Davis received a telephone call from his next-door neighbor. The neighbor said Davis's garage door was open and his car was gone. Davis asked the neighbor to call the police. He immediately drove home from Arizona. When he arrived later that night, he saw that the house had been ransacked. Many of Davis's possessions were

---

[1] The prosecutor referred to Paul Flores as defendant's brother in his closing argument. After a defense objection, the prosecutor clarified that the jury had not heard any evidence that Paul Flores was defendant's brother.

2

gone, including jewelry and cash, as well as the BMW. A kitchen window at the back of the house was broken. A few days later, the BMW was involved in a hit and run traffic collision. A witness identified Paul Flores as fleeing from the car. Flores was arrested. The BMW was totaled.

The People charged defendant with one count of first degree residential burglary.[2] (Pen. Code, § 459.) Before trial began, defense counsel informed the court he was considering calling defendant's twin brother, Marcus Flores, as a witness.[3] The trial court appointed counsel for Marcus. At a mid-point in the trial, Marcus's counsel reported Marcus would exercise his Fifth Amendment right not to testify if called as a witness. Defense counsel argued he wished to ask questions that would not incriminate Marcus, such as whether he was in custody on the date of the burglary. Counsel also suggested he would ask the court to take judicial notice of the fact that Marcus was, at the time of trial, in custody on a residential burglary. The court opined the latter evidence would be inadmissible character evidence. The court also indicated that asking if Marcus was out of custody on a particular date was not by itself relevant because it would not establish he had the opportunity to commit the burglary at issue. The court requested an offer of proof regarding the questions the defense would ask Marcus that would not incriminate him, but were also relevant.

Defense counsel then suggested he might call defendant's sister to testify that defendant has a twin brother, Marcus, and that Marcus was living locally at the time of the burglary. However, counsel was not certain the sister would provide this testimony. The People's case-in-chief was close to an end. Defense counsel tried, unsuccessfully, to call the sister. The court decided to end the day early, after the People rested, to allow

---

[2]    The information alleged: "On or about July 6, 2011, in the County of Los Angeles, the crime of first degree residential burglary, in violation of Penal Code section 459, a felony, was committed by Christopher Flores, who did enter an inhabited dwelling house and trailer coach and inhabited portion of a building occupied by Dennis Davis, with the intent to commit larceny and any felony."

[3]    To avoid confusion, we will refer to Marcus Flores by his first name.

3

the defense the opportunity to address the issue again the following morning. After the jury was excused for the day, defense counsel requested the opportunity to simply display Marcus to the jury as an "exhibit." The court questioned whether this would meaningfully assist the jury.[4] The next morning, defense counsel informed the court he had interviewed defendant's sister and would not be calling her as a witness. The court ruled there was no factual or legal basis for presenting Marcus as an exhibit to the jury. Defense counsel asked to include in the record that a photograph of Marcus was included in a photo lineup shown to the eyewitnesses. The court indicated defense counsel was free to argue generally to the jury regarding the six-pack, but he could not isolate a particular photograph and identify the person depicted as defendant's twin brother. The court explained: "[T]hat's an invitation to the jurors to assume that the twin brother may be culpable other than similar looks, but, in fact, could be the responsible person for the crime. So the court will not permit you to refer to any individual in the six-pack as being the defendant's brother. One, it's not in the record and, two, I don't see the relevance of it."

The jury found defendant guilty as charged. The court sentenced defendant to a state prison term of four years.

## DISCUSSION

### I. The Trial Court Did Not Abuse its Discretion in Excluding Evidence of Defendant's Twin Brother

On appeal, defendant contends the trial court abused its discretion when it excluded the proffered evidence regarding the existence of defendant's twin brother. We find no error.

---

[4] Before concluding for the day, the court had Marcus brought into the courtroom, "just to see what he looks like." After Marcus was briefly brought in, the court remarked: "Maybe the People want to display him. I am not sure what he looked like two years ago."

4

In *People v. Linton* (2013) 56 Cal.4th 1146, 1202, the California Supreme Court recently described the principles governing the admission of evidence of third party culpability: "'Only relevant evidence is admissible. (Evid. Code, § 350.) Evidence that raises a reasonable doubt as to a defendant's guilt, including evidence tending to show that another person committed the crime, is relevant. But evidence that another person had a motive or opportunity to commit the crime, without more, is irrelevant because it does not raise a reasonable doubt about a defendant's guilt; to be relevant, the evidence must link this third person to the actual commission of the crime. [Citation.] Evidence that is relevant still may be excluded if it creates a substantial danger of prejudicing, confusing, or misleading the jury, or would consume an undue amount of time. (See Evid. Code, § 352.)' [Citations.]" We review a trial court's rulings on the admissibility of evidence for abuse of discretion, including rulings regarding relevance, and the exclusion of evidence under Evidence Code section 352. (*People v. Mills* (2010) 48 Cal.4th 158, 195; *People v. Harris* (2005) 37 Cal.4th 310, 337.)

In this case, defendant was unable to proffer any evidence connecting Marcus to the crime. The only evidence defendant sought to introduce was of Marcus's mere existence, and, presumably, the fact that Marcus closely resembled defendant.[5] We agree with the trial court that evidence that Marcus was serving a prison term for residential burglary at the time of trial was inadmissible character evidence. The defense did not argue the evidence of Marcus's burglary conviction was admissible for any purpose other than suggesting he has a criminal disposition. (*People v. McWhorter* (2009) 47 Cal.4th 318, 372-373.) Without any other evidence regarding Marcus's whereabouts during the relevant period, his opportunity to commit the crime, or anything tending to connect him to the burglary, the trial court could reasonably conclude the evidence of his existence was not relevant to defendant's attempt to raise a lingering doubt as to his guilt and was

---

[5]     The record on appeal does not indicate whether defendant and Marcus are identical twins, nor does it include any indication of how similar in appearance defendant and Marcus were at the time of the burglary.

5

inadmissible as evidence of third party culpability. (*People v. Hamilton* (2009) 45 Cal.4th 863, 913-914.) We find no abuse of discretion.

**II.    The Trial Court's Aiding and Abetting Instruction Did Not Violate Defendant's Rights to Due Process or Notice of the Charges Against Him**

We find no error in the trial court's instruction to the jury on aiding and abetting, over a defense objection.

**A. Background**

The court and the parties discussed jury instructions between the prosecution and defense cases. The People requested an aiding and abetting instruction. The prosecutor explained the instruction was consistent with the evidence in the People's case, which established defendant was only seen outside of the Davis house. The defense objected: "Either there's no evidence as an aider and abettor—my position is there's very slim evidence as to him being involved at all other than the fact that he's been I.D.'d as being, you know, near the location." The court concluded the instruction was appropriate.

**B. Discussion**

Defendant asserts he was denied notice of the nature of the charges against him because the prosecution gave no indication prior to the jury instruction conference that it planned to pursue both a direct perpetrator theory of guilty, and an aiding and abetting theory. We disagree.

As the Court of Appeal described in *People v. Quiroz* (2013) 215 Cal.App.4th 65, 70 (*Quiroz*), "[u]nder California's practice of short-form pleading, an instrument charging a defendant as a principal is deemed to charge him as an aider and abettor as well. (§ 971.) This 'notice as a principal is sufficient to support a conviction as an aider or abettor . . . ". . . without the accusatory pleading reciting the aiding and abetting theory . . . .'" [Citations.]" The information charging defendant with burglary as a principal was sufficient to provide him with adequate notice of the charges against him under California law. However, the *Quiroz* court further explained: "A criminal defendant also has a federal constitutional right to '"be informed of the nature and cause of the accusation."' [Citation.] It is unsettled whether California's short-form pleading

6

practice, without more, confers constitutionally adequate notice of the People's decision to proceed on an implicitly charged alternative legal theory. [Citations.] Nevertheless, we have deemed notice of a new theory to be constitutionally sufficient when the defendant is further alerted to the theory by the evidence presented at the preliminary hearing [citations], or by the People's express mention of that theory before or during trial sufficiently in advance of closing argument [citations]. What due process will not tolerate is the People affirmatively misleading or ambushing the defense with their theory." (*Id.* at pp. 70-71.)

In this case, the prosecution requested an aiding and abetting instruction during the instruction conference that took place before the defense case, and before closing arguments. Defendant had the opportunity to present witnesses or evidence in his case to address the aiding and abetting theory. It so happened that defendant had no affirmative evidence, thus, after the instructions conference, the parties proceeded to closing arguments. In light of the opportunity defendant had to present evidence to confront the aiding and abetting instruction, we cannot construe the prosecution's request for the instruction as an "ambush." Further, the evidence at trial was that eyewitnesses saw defendant observing the Davis house and in front of the home with Paul Flores. As between defendant and Paul Flores, the People did not attempt to show who did what in carrying out the burglary. The evidence also established that Paul Flores was arrested in connection with a hit-and-run traffic collision as he fled from Davis's stolen car. Thus, the People's evidence clearly signaled that aiding and abetting principles were potentially at issue in the case. (*People v. Ardoin* (2011) 196 Cal.App.4th 102, 131-132 (*Ardoin*).) Nothing in the record suggests the People affirmatively misled defendant into believing it would not pursue an aiding and abetting theory. (See, e.g., *Sheppard v. Rees* (9th Cir. 1990) 909 F.2d 1234, 1236-1237.)

Defendant's reliance on *Smith v. Lopez* (9th Cir. 2013) 731 F.3d 859 (*Smith*), for a contrary result is misplaced. In *Smith*, the court concluded that although the information was initially sufficient to put the defendant on notice that he could be convicted on an aiding and abetting theory, the prosecution's subsequent conduct affirmatively led the

7

defendant to reasonably believe the prosecution would only rely on a direct principal liability theory. The misleading conduct included the opening statement, in which the prosecutor said the evidence would show '*that man*,' indicating the defendant, murdered his wife and staged a crime scene. The prosecutor made similar statements assigning all blame to the defendant and failing to mention that another person may have been involved. (*Id.* at p. 869.) In the People's case-in-chief, the prosecutor introduced evidence showing that DNA found on the victim's body matched the DNA of only three people: the victim, the defendant, and a crime lab technician. The prosecutor argued in closing that the absence of any other person's DNA at the murder scene meant no unidentified perpetrator could have committed the murder. Further, the prosecution presented no evidence to support an aiding and abetting theory. Instead, the only relevant evidence came indirectly from the defense, which insinuated that one of the defendant's former employees killed the victim. (*Id.* at p. 863.) However, the defense primarily offered evidence to support an alibi, and to show the defendant was physically incapable of carrying out the murder. After the close of the defense case, in which the defendant offered the testimony of the former employee, the prosecutor requested an aiding and abetting instruction. The trial court agreed to give the instruction, over a defense objection. The parties gave closing arguments almost immediately after. (*Id.* at pp. 869-870.)

Under these circumstances, the Court of Appeals concluded the defendant was 'ambushed' and his fundamental right to notice of the nature of the accusations against him was denied. (*Smith, supra*, 731 F.3d at p. 871.) In contrast, here the prosecution evidence established the presence of two people in front of the Davis house: defendant and Paul Flores. While in *Smith* the prosecution argued only one person—the defendant—was involved in the crime, here the evidence was always that two people were at Davis's home immediately before it was determined the house had been burglarized. Moreover, in this case, the prosecution requested the aiding and abetting instruction before the defense case, not after. And, unlike *Smith*, in which the prosecution called over 40 witnesses and offered over 200 exhibits, and the defense

8

presented nearly 30 witnesses and submitted nearly 100 exhibits (*id.* at pp. 862, 863), this case was relatively straightforward. We cannot conclude defendant was ambushed or affirmatively misled, as was the case in *Smith*.

Thus, even if the trial court erred in overruling defendant's objection to the aiding and abetting instruction, we would find the error harmless. In *Smith*, the defendant's primary defenses were that he had an alibi and was physically incapable of committing the crime. Adding an aiding and abetting theory eliminated the utility of those defenses. In this case, defendant's strategy at trial was to contend the prosecution failed to sufficiently establish that he was present during the crime or in any way involved. The defendant's challenge to the prosecution's case was equally applicable to direct principal and aiding and abetting theories of liability. (*Ardoin, supra*, 196 Cal.App.4th at p. 132.) The late notice of an aiding and abetting theory did not unfairly prevent defense counsel from arguing his defense to the jury or substantially mislead counsel in formulating and presenting arguments. (*Quiroz, supra*, 215 Cal.App.4th at p. 71.) We find no prejudicial error.

**DISPOSITION**

The judgment is affirmed.

BIGELOW, P.J.

We concur:

FLIER, J.

GRIMES, J.

9