Irving SHEPPARD,
Petitioner–Appellant,

v.

Robert REES, Respondent–Appellee.

No. 87–15022.

United States Court of Appeals,
Ninth Circuit.

Submitted June 9, 1989 *.

Decided August 25, 1989.

As Amended on Denial of Rehearing
July 6, 1990.

Rehearing En Banc Denied
July 6, 1990.

Irving Sheppard, Tracy, Cal., pro se.

---

* The panel finds this case appropriate for submission without oral argument pursuant to Ninth Circuit Rule 34–4 and Fed.R.App.P. 34(a).

Mary A. Roth, Deputy Atty. Gen., San Francisco, Cal., for respondent-appellee.

Before FARRIS, THOMPSON and TROTT, Circuit Judges.

### ORDER

The opinion filed in this case on August 25, 1989 and published in the advance sheets at 883 F.2d 795–801 (1989) is ordered amended in its entirety as reflected by the Amended Opinion filed this date. With the opinion so amended, the panel has voted unanimously to deny the petition for rehearing and to reject the suggestion for rehearing en banc.

The full court has been advised of the Amended Opinion and the suggestion for en banc rehearing, and no judge of the court has requested a vote on the suggestion for rehearing en banc. Fed.R.App.P. 35(b).

The petition for rehearing is denied, and the suggestion for rehearing en banc is rejected.

### OPINION

TROTT, Circuit Judge:

■ Irving Sheppard, a California state prisoner, appeals pro se the district court's order dismissing his petition for a writ of habeas corpus. He claims, *inter alia*, he did not receive adequate notice to enable him to prepare a proper defense to a charge of felony-murder. We agree. We hold further that a violation of the Sixth Amendment right to be informed of the nature and cause of the accusation is not subject to the harmless-error rule where the violation arises from the constitutionally improper use of one of multiple legal theories of culpability culminating in a general verdict of guilty. Finally, we reverse the district court and order that the writ of habeas corpus issue. We do not reach appellant's other claims.

## I

### BACKGROUND

In an information filed on April 20, 1981, Sheppard was charged with one count of murder under California Penal Code section 187, and with use of a firearm. He was arraigned and pleaded not guilty. The case was tried before a jury on the theory that the killing was premeditated and deliberate, precipitated by an alleged "debt" from a cocaine transaction Sheppard felt was owed to him by the decedent. At no time during pretrial proceedings, opening statements, or the taking of testimony was the concept of felony-murder raised, directly or indirectly.

On July 22, 1981, both the prosecution and defense rested. Each side then submitted and argued their requested jury instructions to the court. Again, there was no mention by the prosecutor of felony-murder. The instructions were apparently settled, and the matters of final arguments and charging the jury were continued to the following day.

On the next morning, the prosecution, for the first time, requested that instructions on robbery and felony-murder be given in conjunction with those on first-degree murder. Defense counsel immediately objected to the State's request:

I object strenuously to the giving of any instructions based on any theory of first degree murder on the felony-murder theory. I would indicate that we went over instructions yesterday morning and no mention was ever made of any theory of felony-murder justification for a first degree murder verdict by the jury. It wasn't until this morning that Mrs. Nedde gave us or made the request of the Court to give the instructions that the Court has just indicated.

... It never occurred to me that the People would ever go forward on a theory of felony-murder, ....

I would note that at no time has a robbery ever been charged in this case. It was never charged in the Municipal Court; there was no holding on that issue by the magistrate at the end of the

preliminary hearing. There was no robbery charge ever filed in Superior Court in an Information. Mrs. Nedde has filed several amended Informations that never included a robbery charge. And suddenly, after we've already gone over all the instructions, we've gone home and prepared our arguments, the time comes to argue the case, Mrs. Nedde is submitting a felony-murder theory.

Nevertheless, the trial court instructed the jury on a felony-murder theory, and the prosecution argued that theory to the jury during closing argument.

The jury then convicted Sheppard of first-degree murder with the use of a firearm, rendering a general verdict without indicating the legal theory on which it relied. Sheppard's conviction was affirmed on direct appeal. The California Supreme Court denied his petition for habeas relief. The district court also denied Sheppard's petition. We review that denial de novo. *Carter v. McCarthy*, 806 F.2d 1373, 1375 (9th Cir.1986), *cert. denied*, 484 U.S. 870, 108 S.Ct. 198, 98 L.Ed.2d 149 (1987).

## II

## DISCUSSION

### A. Sixth Amendment

 Sheppard contends that the jury instruction on felony-murder violated his Sixth Amendment right to be notified of the charges against him. The Sixth Amendment guarantees a criminal defendant a fundamental right to be clearly informed of the nature and cause of the charges in order to permit adequate preparation of a defense.[1] *See Cole v. Arkansas*, 333 U.S. 196, 68 S.Ct. 514, 92 L.Ed. 644

(1948); *see also Gray v. Raines*, 662 F.2d 569, 571 (9th Cir.1981) ("A person's right to reasonable notice of a charge against him, and an opportunity to be heard in his defense—a right to his day in court—are basic in our system of jurisprudence...." (quoting *In re Oliver*, 333 U.S. 257, 273, 68 S.Ct. 499, 507, 92 L.Ed. 682 (1948))). Because neither felony-murder nor the underlying charge of robbery was listed in the information, Sheppard argues he did not receive adequate notice to enable him to prepare a proper defense to the theory of felony-murder.[2]

The State of California originally took the position in this court that Sheppard's Sixth Amendment right to be informed of the nature and cause of the accusation against him had not been violated. The State argued that the general allegation of murder in the primary charging document was constitutionally sufficient in itself to put the defendant on notice that he may have to defend against a charge of felony-murder. In a published opinion, we disagreed. The State sought a rehearing, now conceding that "in the circumstances of this case," "petitioner *was* denied adequate notice and opportunity to prepare to defend against a charge of felony-murder." California explains its current position as follows:

> Hence, the difficulty in this case arises not because California's murder pleading practice furnishes inadequate notice, but because a *pattern of government conduct affirmatively misled the defendant*, denying him an effective opportunity to prepare a defense. 'The defendant was ambushed.'

1. The Sixth Amendment provides that "In all criminal prosecutions, the accused shall enjoy the right ... to be informed of the nature and cause of the accusation...." This guarantee is applicable to the states through the due process clause of the Fourteenth Amendment. *In re Oliver*, 333 U.S. 257, 273–74, 68 S.Ct. 499, 507–08, 92 L.Ed. 682 (1948).

2. This case does not involve a claim that adequate notice was provided by a source other than the primary charging document. An accused could be adequately notified of the nature and cause of the accusation by other means—

for example, a complaint, an arrest warrant, or a bill of particulars. *See, e.g., Gray*, 662 F.2d at 574 (Tang, J., specially concurring). Similarly, it is possible that an accused could become apprised of the particular charges during the course of a preliminary hearing. Any or all of these sources—or perhaps others—might provide notice sufficient to meet the requirements of due process, although precise formal notice is certainly the most reliable way to comply with the Sixth Amendment. The Constitution itself speaks not of form, but of substance.

(emphasis added) (citations omitted) (quoting *Gray*, 662 F.2d at 575 (Tang, J., specially concurring)).

We agree, and this concession settles the Sixth Amendment issue, removes it from controversy, and renders our previous analysis of it moot. However, this does not end the matter. It simply takes us to the next issue: Is this violation of admittedly constitutional proportion subject to the harmless-error rule established in *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

## B. Harmless Error

■ *Chapman* stands for the proposition that not all federal constitutional errors require automatic reversal of a conviction. "[S]ome constitutional errors ... in the setting of a particular case are so unimportant and insignificant that they may, consistent with the Federal Constitution, be deemed harmless...." 386 U.S. at 22, 87 S.Ct. at 827. *See also Delaware v. Van Arsdall*, 475 U.S. 673, 681, 106 S.Ct. 1431, 1436, 89 L.Ed.2d 674 (1986) (noting the "virtually inevitable presence of immaterial error" in a criminal trial). However, constitutional errors that are "basic to a fair trial ... can never be treated as harmless...." *Chapman*, 386 U.S. at 23, 87 S.Ct. at 827. "[S]ome constitutional errors require reversal without regard to the evidence in the particular case." *Rose v. Clark*, 478 U.S. 570, 577, 106 S.Ct. 3101, 3105, 92 L.Ed.2d 460 (1986). For example, the use of a coerced confession, the complete denial of the right to counsel, adjudication by a biased judge, and the directing of a verdict for the prosecution in a criminal trial by jury are errors that "necessarily render a trial fundamentally unfair." *Id.* at 577, 106 S.Ct. at 3106; *see also Satterwhite v. Texas*, 486 U.S. 249, 256, 108 S.Ct. 1792, 100 L.Ed.2d 284 (1988) ("Some constitutional violations, however, by their very nature cast so much doubt on the fairness of the trial process that, as a matter of law, they can never be considered harmless."); *Coleman v. McCormick*, 874 F.2d 1280, 1289 (9th Cir.1989) (listing more examples).

■ The constitutional error in the instant case was of such a fundamental nature. A trial cannot be fair unless the nature of the charges against a defendant are adequately made known to him or her in a timely fashion. *See Strickland v. Washington*, 466 U.S. 668, 685, 104 S.Ct. 2052, 2063, 80 L.Ed.2d 674 (1984) (a fair trial is "one in which evidence subject to *adversarial testing* is presented to an impartial tribunal *for resolution of issues defined in advance of the proceeding*") (emphasis added). Here, the prosecutor "ambushed" the defense with a new theory of culpability after the evidence was already in, after both sides had rested, and after the jury instructions were settled. This new theory then appeared in the form of unexpected jury instructions permitting the jury to convict on a theory that was neither subject to adversarial testing, nor defined in advance of the proceeding.

Moreover, the right to counsel is directly implicated. That right is next to meaningless unless counsel knows and has a satisfactory opportunity to respond to the charges against which he or she must defend. Sheppard's counsel had no occasion to defend against the felony-murder theory during the evidentiary phase of the trial. This error affected the composition of the record. *Rose*, 478 U.S. at 579, n. 7, 106 S.Ct. at 3107, n. 7. Defense counsel would have added an evidentiary dimension to his defense designed to meet the felony-murder theory had he known at the outset what he was up against.

Thus, it is incorrect to surmise, as did the district court, that the error was harmless because there was an "abundance of evidence" to support a finding of felony-murder. The defendant had no opportunity to present his own evidence on felony-murder to refute that of the prosecution. The record is too tainted to yield any such conclusions.

Neither can we, as the state suggests, base a harmless-error determination on the seemingly overwhelming weight of the evidence pointing to petitioner's guilt of premeditated murder. Where two theories of culpability are submitted to the jury, one

correct and the other incorrect, it is impossible to tell which theory of culpability the jury followed in reaching a general verdict. *See Mills v. United States*, 164 U.S. 644, 646, 17 S.Ct. 210, 210, 41 L.Ed. 584 (1897); *Givens v. Housewright*, 786 F.2d 1378, 1381 (9th Cir.1986).[3]

■ The constitutional requirement of a fair trial is not satisfied merely by the existence in the record of sufficient evidence to establish guilt. To apply such a test as dispositive would be to ignore other mandatory components of a fair trial, and would defeat the purpose of the notice requirement. The error in this case goes to the heart of our adversarial process and is inconsistent with elementary due process. We cannot regard as fair a trial in which the defendant's right to defend was impaired by a lack of notice as to the nature and cause of the accusation. Under these circumstances, lack of constitutionally required notice necessarily denies a defendant the fundamental right to a fair trial.[4] Such errors "abort[ ] the basic trial process ... or den[y] it altogether." *Rose*, 478 U.S. at 578, n. 6, 106 S.Ct. at 3106, n. 6.

In conclusion, we repeat and underscore the concern expressed in Justice Stevens's concurring remarks in *Rose*: "An automatic application of harmless-error review in case after case, and for error after error, can only encourage prosecutors to subordinate the interest in respecting the Constitution to the ever present and always powerful interest in obtaining a conviction in a particular case." 478 U.S. at 588–89, 106 S.Ct. at 3111–12 (Stevens, J., concurring). This interest in respecting the Constitution is a beacon that must guide prosecutors in their decisions. It does not countenance constitutional ambushes. Chief Justice Sutherland said it well in *Berger v. United States*, 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314 (1935):

[The prosecutor] is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done.... It is as much his [or her] duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.

295 U.S. at 88, 55 S.Ct. at 633.

### CONCLUSION

This opinion vacates our earlier opinion in this case. We reverse the district court's denial of the petition for writ of habeas corpus. The case is remanded to the district court with directions that it issue the writ and determine a reasonable time in which the State of California shall retry the petitioner.

REVERSED and REMANDED.

---

3. *Givens*, which was decided before *Rose*, did not discuss the issue we find dispositive in this case, i.e., whether a Sixth Amendment notice violation of this type can ever be subject to the harmless-error rule.

4. The holding in this case pertains only to situations involving multiple legal theories and general verdicts. Had the jury returned a special verdict identifying the precise theory used to reach its result, our analysis would differ.