# SUPREME COURT OF THE UNITED STATES

## RAUL LOPEZ, WARDEN *v.* MARVIN VERNIS SMITH

ON PETITION FOR WRIT OF CERTIORARI TO THE UNITED
STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

No. 13–946   Decided October 6, 2014

PER CURIAM.

When a state prisoner seeks federal habeas relief on the ground that a state court, in adjudicating a claim on the merits, misapplied federal law, a federal court may grant relief only if the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U. S. C. §2254(d)(1). We have emphasized, time and again, that the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 110 Stat. 1214, prohibits the federal courts of appeals from relying on their own precedent to conclude that a particular constitutional principle is "clearly established." See, *e.g., Marshall* v. *Rodgers*, 569 U. S. __, __ (2013) (*per curiam*) (slip op. at 6). Because the Ninth Circuit failed to comply with this rule, we reverse its decision granting habeas relief to respondent Marvin Smith.

I

Respondent was arrested for the murder of his wife, Minnie Smith. On December 15, 2005, Mrs. Smith was found dead in the home she shared with respondent, and it was determined that she was killed by a massive blow to the head from a fireplace log roller. The home appeared to have been ransacked, and valuable jewelry was missing.

The State charged respondent with first-degree murder and offered substantial incriminating evidence at trial. The prosecution presented evidence that respondent "was unfaithful to his wife for many years, that his wife was

threatening to divorce him, and that he told one of his former employees . . . that the 'only way' he or his wife would get out of their marriage was 'to die,' because he was 'not going to give [Mrs. Smith] half of what [he] got so some other man can live off of it.'" 731 F. 3d 859, 862–863 (CA9 2013) (second alteration in original). Respondent's DNA was also found on the murder weapon, pieces of duct tape found near the body, and a burned matchstick that was found in the bedroom and that may have been used to inflict burns on the body. See *id.*, at 863; see also *People* v. *Smith*, 2010 WL 4975500, *1–*2 (Cal. App., Dec. 8, 2010). The missing jewelry was discovered in the trunk of respondent's car, wrapped in duct tape from the same roll that had provided the pieces found near the body. See 731 F. 3d, at 863. Respondent's DNA was found on the duct tape in his trunk. See *Smith*, 2010 WL 4975500, at *2. In addition, a criminologist testified that the ransacking of the Smiths' home appeared to have been staged. See 731 F. 3d, at 863.

Respondent defended in part on the basis that he could not have delivered the fatal blow due to rotator cuff surgery several weeks before the murder. See *ibid.* (He mounted this defense despite the fact that police had observed him wielding a 6-foot-long 2 by 4 to pry something out of a concrete slab at a construction site the week after the murder. See *Smith*, 2010 WL 4975500, at *1.) The defense also suggested that one of respondent's former employees had committed the crime to obtain money to pay a debt he owed respondent. See 731 F. 3d, at 863.

At the close of evidence, the prosecution requested an aiding-and-abetting instruction, and the trial court agreed to give such an instruction. During closing argument, the prosecutor contended that respondent was physically able to wield the log roller that had killed Mrs. Smith, but he also informed the jury that, even if respondent had not delivered the fatal blow, he could still be convicted on an

aiding-and-abetting theory. See *id.,* at 864. The jury convicted respondent of first-degree murder without specifying which theory of guilt it adopted.

After a series of state-court proceedings not relevant here, the California Court of Appeal affirmed respondent's conviction. The state court rejected respondent's assertion that he had inadequate notice of the possibility of conviction on an aiding-and-abetting theory. The court explained that "'an accusatory pleading charging a defendant with murder need not specify the theory of murder on which the prosecution intends to rely,'" and noted that the "information charged defendant with murder in compliance with the governing statutes." *Smith*, 2010 WL 4975500, at *6–*7. Furthermore, the court held that "even if this case required greater specificity concerning the basis of defendant's liability, the evidence presented at his preliminary examination provided it." *Id.*, at *7. The upshot was that "the information and preliminary examination testimony adequately notified defendant he could be prosecuted for murder as an aider and abettor." *Id.,* at *8. The California Supreme Court denied respondent's petition for review.

Respondent filed a petition for habeas relief with the United States District Court for the Central District of California. The Magistrate Judge recommended granting relief, and the District Court summarily adopted the Magistrate Judge's recommendation.

The Ninth Circuit affirmed. The court acknowledged that the "information charging [respondent] with first-degree murder was initially sufficient to put him on notice that he could be convicted either as a principal or as an aider-and-abettor," because under California law "aiding and abetting a crime is the same substantive offense as perpetrating the crime." 731 F. 3d, at 868. But the Ninth Circuit nevertheless concluded that respondent's Sixth Amendment and due process right to notice had been

violated because it believed the prosecution (until it re-
quested the aiding-and-abetting jury instruction) had tried
the case only on the theory that respondent himself had
delivered the fatal blow. See *id.,* at 869.

The Ninth Circuit did not purport to identify any case in
which we have found notice constitutionally inadequate
because, although the defendant was initially adequately
apprised of the offense against him, the prosecutor focused
at trial on one potential theory of liability at the expense
of another. Rather, it found the instant case to be "indis-
tinguishable from" the Ninth Circuit's own decision in
*Sheppard* v. *Rees*, 909 F. 2d 1234 (1989), which the court
thought "faithfully applied the principles enunciated by
the Supreme Court." 731 F. 3d, at 868. The court also
rejected, as an "unreasonable determination of the facts,"
28 U. S. C. §2254(d)(2), the California Court of Appeal's
conclusion that preliminary examination testimony and
the jury instructions conference put respondent on notice
of the possibility of conviction on an aiding-and-abetting
theory. See *id.,* at 871–872.

## II
### A

The Ninth Circuit held, and respondent does not dis-
pute, that respondent initially received adequate notice of
the possibility of conviction on an aiding-and-abetting
theory. The question is therefore whether habeas relief is
warranted because the State principally relied at trial on
the theory that respondent himself delivered the fatal
blow.

Assuming, *arguendo,* that a defendant is entitled to
notice of the possibility of conviction on an aiding-and-
abetting theory, the Ninth Circuit's grant of habeas relief
may be affirmed only if this Court's cases clearly establish
that a defendant, once adequately apprised of such a
possibility, can nevertheless be deprived of adequate

notice by a prosecutorial decision to focus on another theory of liability at trial. The Ninth Circuit pointed to no case of ours holding as much. Instead, the Court of Appeals cited three older cases that stand for nothing more than the general proposition that a defendant must have adequate notice of the charges against him. See 731 F. 3d, at 866–867 (citing *Russell* v. *United States*, 369 U. S. 749, 763–764 (1962); *In re Oliver*, 333 U. S. 257, 273–274 (1948); *Cole* v. *Arkansas*, 333 U. S. 196, 201 (1948)).

This proposition is far too abstract to establish clearly the specific rule respondent needs. We have before cautioned the lower courts—and the Ninth Circuit in particular—against "framing our precedents at such a high level of generality." *Nevada* v. *Jackson*, 569 U. S. \_\_\_, \_\_\_ (2013) (*per curiam*) (slip op., at 7). None of our decisions that the Ninth Circuit cited addresses, even remotely, the specific question presented by this case. See *Russell*, *supra*, at 752 (indictment for "refus[ing] to answer any question pertinent to [a] question under [congressional] inquiry," 2 U. S. C. §192, failed to "identify the subject under congressional subcommittee inquiry"); *In re Oliver*, *supra*, at 259 (instantaneous indictment, conviction, and sentence by judge acting as grand jury with no prior notice of charge to defendant); *Cole*, *supra*, at 197 (affirmance of criminal convictions "under a . . . statute for violation of which [defendants] had not been charged").[1]

Because our case law does not clearly establish the legal

---

[1] Respondent claims that our decision in *Lankford* v. *Idaho*, 500 U. S. 110 (1991), although not cited by the Ninth Circuit, clearly establishes the legal principle he needs. But *Lankford* is of no help to respondent. That case addressed whether a defendant had adequate notice of the possibility of imposition of the death penalty—a far different question from whether respondent had adequate notice of the particular theory of liability. See *id.,* at 111. In *Lankford*, moreover, the trial court itself made specific statements that encouraged the defendant to believe that the death penalty was off the table. See *id.,* at 116–117.

proposition needed to grant respondent habeas relief, the Ninth Circuit was forced to rely heavily on its own decision in *Sheppard, supra.* Of course, AEDPA permits habeas relief only if a state court's decision is "contrary to, or involved an unreasonable application of, clearly established Federal law" as determined by this Court, not by the courts of appeals. 28 U. S. C. §2254(d)(1). The Ninth Circuit attempted to evade this barrier by holding that *Sheppard* "faithfully applied the principles enunciated by the Supreme Court in *Cole*, *Oliver*, and *Russell*." 731 F. 3d, at 868. But Circuit precedent cannot "refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that this Court has not announced." *Marshall*, 569 U. S., at __ (slip op., at 6). *Sheppard* is irrelevant to the question presented by this case: whether our case law clearly establishes that a prosecutor's focus on one theory of liability at trial can render earlier notice of another theory of liability inadequate.

### B

The Ninth Circuit also disagreed with what it termed the state court's "determination of the facts"—principally, the state court's holding that preliminary examination testimony and the prosecutors' request for an aiding-and-abetting jury instruction shortly before closing arguments adequately put respondent on notice of the prosecution's aiding-and-abetting theory. 731 F. 3d, at 871 (internal quotation marks omitted). The Ninth Circuit therefore granted relief under §2254(d)(2), which permits habeas relief where the state-court "decision . . . was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." That holding cannot be sustained.

In purporting to reject the state court's "determination of the facts," the Ninth Circuit focused on preliminary examination testimony by an investigator about conversa-

tions between respondent and his cellmate. According to the investigator, the cellmate stated that respondent told him that respondent "had to get rid of his wife because she was standing in the way of his future plans; that she was threatening to divorce him and he wasn't going to give up half of his property"; that respondent made his house look like the site of a home invasion robbery; and that, when he left for work the morning of the murder, he left the window open and did not set the alarm. *Smith*, 2010 WL 4975500, at \*7. The investigator also testified that the cellmate did not "'know any of the details of the homicide itself and how it was carried out,'" and that respondent "'never told [the cellmate] specifically who'" committed the homicide. *Ibid.* The California Court of Appeal held that these statements, taken together, suggested that respondent was involved in planning and facilitating the crime but that the fatal blow might have been delivered by an accomplice. *Ibid.* Thus, the California court believed that even assuming that the information by itself was not sufficient, this testimony naturally lent itself to conviction on an aiding-and-abetting theory and so gave respondent even greater notice of such a possibility. *Ibid.*

The Ninth Circuit also focused on the jury instructions conference, which occurred after the defense rested but before the parties' closing arguments. During that conference, prosecutors requested an aiding-and-abetting instruction, which further provided notice to respondent. The California Court of Appeal concluded that this case is distinguishable from *Sheppard* v. *Rees*, 909 F. 2d 1234, because, unlike that case, the conference here did not occur immediately before closing arguments. The Ninth Circuit disagreed, holding that because "defense counsel had only the lunch recess to formulate a response" to the aiding-and-abetting instruction, this case "is indistinguishable from *Sheppard*," where the prosecution also "requested the new instruction the same day as closing."

731 F. 3d, at 868, 870.

   Although the Ninth Circuit claimed its disagreement with the state court was factual in nature, in reality its grant of relief was based on a legal conclusion about the adequacy of the notice provided.  The Ninth Circuit believed that the events detailed above, even when taken together with the information filed against respondent, failed to measure up to the standard of notice applicable in cases like this.  That ranked as a legal determination governed by §2254(d)(1), not one of fact governed by §2254(d)(2).  But, as we have explained, the Ninth Circuit cited only its own precedent for establishing the appropriate standard.  Absent a decision of ours clearly establishing the relevant standard, the Ninth Circuit had nothing against which it could assess, and deem lacking, the notice afforded respondent by the information and proceedings.  It therefore had no basis to reject the state court's assessment that respondent was adequately apprised of the possibility of conviction on an aiding-and-abetting theory.[2]

   The petition for a writ of certiorari is granted.  The judgment of the United States Court of Appeals for the Ninth Circuit is reversed, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

————

   [2] Because we reverse the Ninth Circuit's decision on the foregoing grounds, we need not opine on the correctness of that court's discussion of *Griffin* v. *United States*, 502 U. S. 46 (1991), or *Brecht* v. *Abrahamson*, 507 U. S. 619 (1993).