Stephen Christopher GRANT,
Petitioner–Appellant,

v.

Kenneth T. McKEE, Warden,
Respondent–Appellee.

No. 15–1487.

United States Court of Appeals,
Sixth Circuit.

May 3, 2016.

Before: GUY, BOGGS, and COOK,
Circuit Judges.

RALPH B. GUY, JR., Circuit Judge.

Petitioner, Stephen Grant, appeals the district court's denial of his petition for a writ of habeas corpus. We affirm.

## I.

Petitioner strangled his wife to death, dismembered her body, and hid parts of the body throughout a nearby park. He reported her missing, resulting in a weeks-long search. Petitioner retained David Griem as counsel, and Griem informed petitioner and the Macomb County Sheriff's Department that any communication with petitioner must go through him. During a search of the family residence, where police discovered the victim's torso, petitioner fled. Police arrested petitioner near Petoskey, Michigan two days later. Despite a prior agreement to the contrary, police did not inform Griem that they had captured petitioner.

Shortly after officers apprehended petitioner and airlifted him for medical treatment for hypothermia and frostbite, Griem publicly withdrew as his counsel in a televised address. Petitioner subsequently asked to speak to Griem, and officers informed him that he had terminated their attorney-client relationship that morning. Officers offered to assist petitioner in finding a local attorney, but he said he did not want one. Petitioner instead asked to call the officer in charge of the investigation, Det. Sgt. Kozlowski. Kozlowski again informed petitioner that Griem had resigned, that he did not need to speak to officers, and that he could retain another attorney. During a second call, petitioner asked Kozlowski to come to Petoskey so he could make a statement. Kozlowski drove to the hospital and read petitioner his *Miranda* rights, which he waived. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Petitioner wrote out a statement wherein he confessed to strangling his wife, including a diagram indicating where he hid her body parts.

Petitioner pleaded guilty to mutilation of a dead body. However, he went to trial on his first-degree murder charge, claiming the killing was not premeditated. Petitioner moved to suppress his confession under the Fifth Amendment, arguing that his waiver was invalid because police violated their agreement that they would conduct all communication through Griem. After a suppression hearing, the trial court denied the motion. Following trial, a jury found petitioner guilty of the lesser included offense of second-degree murder.

Petitioner appealed, raising the suppression claim and others before the Michigan Court of Appeals, which affirmed his conviction and sentence. *People v. Grant*, No. 284100, 2009 WL 3199493, at *12 (Mich.Ct. App. Oct. 6, 2009) (per curiam). He appealed to the Michigan Supreme Court, which denied leave to appeal. *People v. Grant*, 485 Mich. 1128, 779 N.W.2d 803 (2010). Petitioner then commenced a habeas action in the district court under the Antiterrorism and Effective Death Penalty Act (AEDPA), 28 U.S.C. § 2254, raising the instant claim and challenging the trial court's denial of his motion for change of venue. The petition was referred to a magistrate judge, who recommended denying the petition. The district court adopted this recommendation. *Grant v. McKee*, 95 F.Supp.3d 1041, 1049 (E.D.Mich.2015). The district court granted a certificate of appealability solely on the suppression issue.

## II.

We review the district court's legal conclusions *de novo*, and its factual findings for clear error. *Davis v. Lafler*, 658 F.3d 525, 530 (6th Cir.2011) (en banc).

When a petitioner challenges his custody pursuant to a state-court judgment, AEDPA erects a regime of respect for—and thus deference to—the state court's decision. Such a writ

> shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Petitioner asserts that the trial court unreasonably applied clearly established federal law as deter-

mined by the Supreme Court. (Appellant's Brief, p 30.) "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan,* 550 U.S. 465, 473, 127 S.Ct. 1933, 167 L.Ed.2d 836 (2007). Even "[t]he gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness." *Lockyer v. Andrade,* 538 U.S. 63, 75, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003). A state prisoner "must show that the state court's ruling on the claim being presented ... was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter,* 562 U.S. 86, 103, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011).

### III.

We begin our analysis under § 2254(d)(1) by "identify[ing] the 'clearly established Federal law, as determined by the Supreme Court of the United States' that governs the habeas petitioner's claims." *Marshall v. Rodgers,* —— U.S. ——, 133 S.Ct. 1446, 1449, 185 L.Ed.2d 540 (2013) (per curiam) (quoting 28 U.S.C. § 2254(d)(1)). Although petitioner makes extensive arguments in reliance upon *Brewer v. Williams,* 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977), he concedes that there is no precedent exactly on point. Our inquiry could end here, as there is no applicable clearly established federal law as determined by the Supreme Court. *See Woods v. Donald,* —— U.S. ——, 135 S.Ct. 1372, 1377, 191 L.Ed.2d 464 (2015) (per curiam) ("Because none of our cases confront 'the specific question presented by this case,' the state court's decision could not be 'contrary to' any holding from this Court." (quoting *Lopez v. Smith,* —— U.S.

——, 135 S.Ct. 1, 4, 190 L.Ed.2d 1 (2014) (per curiam))); *see also United States v. Golinveaux,* No. 08–2015, 2008 WL 4829710, at *7 (N.D.Iowa, Nov. 6, 2008) (declining to apply *Brewer* in the Fifth Amendment context because the Supreme Court considered only the defendant's Sixth Amendment waiver claim).

Assuming for the sake of argument that *Brewer* applies outside the Sixth Amendment context, it is no more helpful to petitioner. In *Brewer,* police arrested the defendant in Davenport, Iowa for murdering a young child, and transported him to Des Moines, Iowa. *Brewer,* 430 U.S. at 390–91, 97 S.Ct. 1232. The defendant arranged for attorneys in both locations, who in turn reached an agreement with the officers that they would not question him during transport. *Id.* at 391–92, 97 S.Ct. 1232. Despite the agreement, an officer remarked, "you ... are the only person that knows where this little girl's body is" and "the parents of this little girl should be entitled to a Christian burial for the little girl who was snatched away from them on Christmas [E]ve and murdered." *Id.* at 392–93, 97 S.Ct. 1232. The defendant then led the officers to the victim's body. *Id.* at 393, 97 S.Ct. 1232. The Court concluded that "[d]espite [the defendant's] express and implicit assertions of his right to counsel, [the d]etective[ ] proceeded to elicit incriminating statements, ... did not preface this effort by telling [the defendant] that he had a right to the presence of a lawyer, and made no effort at all to ascertain whether [the defendant] wished to relinquish that right." *Id.* at 405, 97 S.Ct. 1232. This, the Court held, constituted a "clear ... violation of the Sixth and Fourteenth Amendments." *Id.* at 406, 97 S.Ct. 1232.

The Court made it clear, however, that it did not hold that a defendant "could not, without notice to counsel, have waived his

rights under the Sixth and Fourteenth Amendments." *Id.* at 405–06, 97 S.Ct. 1232. It merely held that the defendant in *Brewer* had not. *Id.* at 405, 97 S.Ct. 1232. Petitioner, on the other hand, did waive his Fifth Amendment right to counsel and make a voluntary statement. Unlike the defendant in *Brewer,* he was under no compulsion whatsoever to confess. Officers went to great lengths to ensure that petitioner knew he could procure a local attorney (he declined), and was not required to give a statement (he insisted). Unlike in *Brewer,* petitioner initiated contact with the officer in charge, after two different officers and a nurse refused to discuss the matter with him. There can be no doubt that petitioner knowingly, intelligently, and voluntarily waived his Fifth Amendment rights. *See Edwards v. Arizona,* 451 U.S. 477, 484–85, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981) ("[A]n accused ... having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, *unless the accused himself initiates further communication, exchanges, or conversations with the police.*") (emphasis added); *see also Moran v. Burbine,* 475 U.S. 412, 422–23, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986) ("Once it is determined that a suspect's decision not to rely on his rights was uncoerced, that he at all times knew he could stand mute and request a lawyer ... the analysis is complete and the waiver is valid as a matter of law.").

Petitioner's argument that things would somehow have gone differently had police notified Griem of his arrest in the two-and-a-half hours between it and Griem's resignation is pure speculation. It is also contradicted by the record. Griem testified that he decided to withdraw as counsel two days prior to petitioner's arrest, and did not testify that that he would have continued to represent petitioner if police had advised him of the arrest prior to his televised resignation. Moreover, petitioner had previously ignored Griem's advice not to speak with police.

*Brewer* did not "clearly establish" any rule of law that aids petitioner. 28 U.S.C. § 2254(d)(1). By its own disclaimer, Brewer is inapplicable to a valid waiver of the right to counsel, with or without notice to counsel. *Brewer,* 430 U.S. at 405–06, 97 S.Ct. 1232. The Michigan Court of Appeals ruling reaching the same conclusion therefore was not "unreasonable." *Schriro,* 550 U.S. at 473, 127 S.Ct. 1933. Given the substantial difference between Brewer and the facts of this case, and the clarity of petitioner's valid waiver, a contrary conclusion would be unreasonable. The district court rightly denied petitioner a writ of habeas corpus.

**AFFIRMED.**