UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

ERIC ARDOIN,

               Petitioner - Appellant,

v.

ERIC ARNOLD, Acting Warden,

               Respondent - Appellee.

No. 13-15854

D.C. No. 3:11-cv-05564-EMC
Northern District of California,
San Francisco

ORDER

Before: THOMAS, Chief Judge and REINHARDT and McKEOWN, Circuit Judges.

The memorandum disposition filed May 4, 2016 is withdrawn and replaced by the memorandum disposition filed contemporaneously with this order. With the filing of the new memorandum disposition, the panel has voted to deny the petition for panel rehearing and rehearing en banc. The full court has been advised of the petition for rehearing en banc, and no judge has requested a vote on whether to rehear the matter en banc. Fed. R. App. P. 35. The petitions for rehearing and rehearing en banc are DENIED. No further petitions for rehearing or petitions for rehearing en banc will be entertained.

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

ERIC ARDOIN,

               Petitioner - Appellant,

v.

ERIC ARNOLD, Acting Warden,

               Respondent - Appellee.

No. 13-15854

D.C. No. 3:11-cv-05564-EMC

MEMORANDUM[*]

Appeal from the United States District Court
for the Northern District of California
Edward M. Chen, District Judge, Presiding

Argued and Submitted October 20, 2015
San Francisco, California

Before: THOMAS, Chief Judge and REINHARDT and McKEOWN, Circuit
Judges.

      Petitioner Eric Ardoin appeals the district court's denial of his petition for a

writ of habeas corpus. We reverse the district court's decision on Ardoin's Sixth

Amendment claim, and therefore do not reach the remaining issues in his habeas

petition.

---

      [*]   This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

**I: Facts:**

In 2007, Ardoin was convicted of first degree murder and sentenced to 85 years-to-life in prison for the death of Rodney Tom, a San Francisco drug dealer. The state charged Ardoin along with Rebecca Burgos and Albert Jacquez, a married couple who lived downstairs from Tom. All three defendants knew the victim and had purchased drugs from him. Prior to Ardoin's trial, Burgos pled guilty to accessory after the fact and agreed to testify against her co-defendants.

The state tried Ardoin and Jacquez together on the theory that Ardoin had killed Tom in the course of Ardoin and Jacquez's robbery of Tom's apartment. Burgos, the state's primary witness, testified that she returned home one evening and found Ardoin in the common entrance hall serving the couple's and Tom's apartments. An individual (whose voice she later recognized as her husband's) tackled her from behind and tied her up. She testified that she then watched Ardoin walk up the stairs toward Tom's apartment. She heard the sounds of a struggle inside Tom's apartment and Tom "yelling." Then, "it got quiet" and she saw Ardoin walk back down the stairs with the tackle box in which Tom stored his drugs. Ardoin and Jacquez left, and Burgos went upstairs and discovered Tom's dead body. Burgos also testified that when she saw Ardoin later that night she noticed "a scratch on his face." A detective also testified that a few days after the

murder police raided a house and found Jacquez and Burgos (but not Ardoin) there with drugs that had belonged to Tom. Beyond Burgos's testimony, the state introduced minimal evidence in support of Ardoin's guilt. First, the parties stipulated that Ardoin's DNA was under Tom's fingernail. Second, a cab driver testified that he drove two men to a location near Tom's apartment around the time of the murder. The cab driver was "50/50" sure that Ardoin was one of the men but could not identify Jacquez. Finally, the state introduced evidence that Ardoin and Jaquez exchanged multiple phone calls the night of, and days following, Tom's murder.

Before Ardoin's closing argument, the parties discussed and agreed to jury instructions. These jury instructions charged both defendants with murder with malice aforethought, and then charged Jacquez, and only Jacquez, with robbery felony murder and aiding and abetting murder. The jury deliberated for four days before sending the trial court the following note: "If we believe that Eric Ardoin was not the perpetrator of the murder, can we still find him guilty under a theory of felony murder, or otherwise?" The judge indicated that he was inclined to respond in the affirmative, but the jury had sent the note late in the day and the judge was planning to leave the next day for vacation. Accordingly, he left the matter to a replacement judge, who told the jury that it could convict Ardoin under a felony

3

murder theory and then denied Ardoin's motion to reopen closing argument, thus denying him an opportunity to present a defense to the new charge. Approximately one hour later, the jury informed the trial court that it had reached a guilty verdict.

Ardoin appealed, raising, among other issues, a Sixth Amendment claim based on the trial court's refusal to reopen closing argument. The Court of Appeal affirmed the conviction, and the California Supreme Court summarily denied Ardoin's petition for review. Ardoin then filed a federal habeas petition.

## II: Standard of Review:

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") applies, and we review subject to its dictates. At the district court, the state agreed with Ardoin that the Court of Appeal found constitutional error but concluded that the error was harmless. Before us, however, the state took a different position, arguing that the Court of Appeal found state-law error and that the merits of Ardoin's claim should therefore be subject to AEDPA's deferential review. In our view, the state was right the first time.

Ardoin's challenge to the denial of the motion to reopen argument was presented to the Court of Appeal as one of constitutional magnitude; the Court of Appeal described Ardoin's arguments as based on the "due process right to a fair trial" and the right to "effective assistance of counsel." The court's analysis

4

therefore tracked that framework. In its discussion of Ardoin's claim, the Court of Appeal stated that the "Sixth and Fourteenth Amendments to the United States Constitution . . . guarantee a criminal defendant the right to effective assistance of counsel at all critical stages of the proceedings," and that an aspect of this right is "a reasonable opportunity to prepare a defense and respond to the charges." It then held that if supplemental jury instructions are given without reopening closing argument, "the defendant's right to a fair trial may be compromised." This discussion shows that the Court of Appeal recognized the state court's error to be

of federal constitutional magnitude.[1]  Accordingly, we review the merits of

Ardoin's claim de novo.[2]

**III: Whether Constitutional Error Occurred:**

The "right to counsel . . . is next to meaningless unless counsel knows and

has a satisfactory opportunity to respond to the charges against which he or she

must defend." *Sheppard v. Rees*, 909 F.2d 1234, 1237 (9th Cir. 1990).  In

*Sheppard*, we recognized a Sixth Amendment violation after the state tried the

petitioner on a deliberate murder theory but then requested, on the morning of

---

[1] It is true that the Court of Appeal applied non-constitutional harmless error analysis to Ardoin's claim, which, if that were the extent of the analysis, could have suggested that a state court did not find constitutional error. *See Ortiz v. Yates*, 704 F.3d 1026, 1033-34 & n.4 (9th Cir. 2012).  In *Ortiz*, however, the state court explicitly stated that the error violated the California Evidence Code and did not mention the constitution at all. *Id.*  Here, by contrast, the Court of Appeal explicitly grounded the error in the Sixth Amendment.

[2] The question of what standard of review to apply to a state court determination favorable to a petitioner is unsettled. *See Ayala v. Wong*, 756 F.3d 656, 664 n.4, *rev'd on other grounds sub nom Davis v. Ayala*, 135 S. Ct. 2187 (2015).  Arguments can be made 1) that a court "would be required to accord AEDPA deference . . . *in favor* of the petitioner"; 2) "that § 2254(d), by its text and purpose, is inapplicable to a claim on which the petitioner prevailed in state court, and therefore the claim should be reviewed de novo"; and 3) "that a state court's determination in favor of petitioner cannot be relitigated on habeas review" and thus should not be reviewed at all. *Id.*  Because we conclude that federal constitutional error occurred under de novo review—the most "searching" of these three possibilities—we need not reach this question. *See id.* at 670 n.8.

6

closing argument, a felony murder instruction (which the trial court gave).[3] *Id.* at

1235-36. Since then, we have stated that *Sheppard* is a "narrow ruling" that is

"limited . . . to its facts." *Morrison v. Estelle*, 981 F.2d 425, 428 (9th Cir. 1992).

Here, however, the facts present an even more compelling case for relief. Unlike

in *Sheppard*, defense counsel here had no reason to argue felony murder during the

closing argument he was able to deliver, as the court had just approved jury

instructions that informed the jury that *only* Jacquez was charged with that offense.

And, more important, Ardoin's counsel had no opportunity whatsoever to argue

felony murder after learning that the jury could convict on that theory. The trial

court's decision no doubt violated Ardoin's Sixth Amendment right to counsel

during closing argument.[4] *See Herring v. New York*, 422 U.S. 853, 862-63 (1975).

**IV: Whether the Error was Harmless:**

---

[3] Contrary to the Court of Appeal's conclusion, the court in *Sheppard* found a Sixth Amendment violation, not a violation of the Federal Rules of Criminal Procedure. *See* 909 F.2d at 1237-38.

[4] The dissent argues that the Court of Appeal's decision is not "contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Because the Court of Appeal found constitutional error, however, we are not required to apply the deferential standard of review set forth in § 2254(d)(1) but instead review de novo. *See Ayala*, 756 F.3d at 670 n.8.

We cannot grant a state prisoner's habeas petition unless we are, at a minimum, in grave doubt that the error "had substantial and injurious effect or influence in determining the jury's verdict." *O'Neal v. McAninch*, 513 U.S. 432, 436 (1995) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 627 (1993)). Here, we apply *Brecht*/*O'Neal* without consideration of whether the Court of Appeal's harmlessness determination was objectively unreasonable because, as the state recognizes, the Court of Appeal did not apply *Chapman v. California*, 386 U.S. 18 (1967). Instead, it held that "the error is one that requires reversal only if, viewing the record in its entirety, a party 'was unfairly prevented from arguing his or her defense to the jury or was substantially misled in formulating and presenting arguments'" (quoting *United States v. Foppe*, 993 F.2d 1444, 1451 (9th Cir. 1993)). When a state court applies "a less demanding" harmless error standard than *Chapman*, "we owe no deference to this harmless error analysis" and instead "apply our 'independent harmless error analysis' under *Brecht*." *Cudjo v. Ayers*, 698 F.3d 752, 768-69 (9th Cir. 2012) (quoting *Inthavong v. Lamarque*, 420 F.3d 1055, 1059 (9th Cir. 2005)). This rule has not been altered by *Ayala*, which held that "*[w]hen* a *Chapman* decision is reviewed under AEDPA," a federal court owes deference to that decision. 135 S. Ct. at 2199 (emphasis added).

8

Three crucial facts frame our harmlessness analysis. First, the jury considered this to be a close case, as it deliberated for four days before sending the note regarding Ardoin and felony murder. Second, the jury assuredly convicted Ardoin under a theory of felony murder, as it deliberated for days without resolution and then announced that it had reached a verdict approximately an hour after receiving the felony murder instruction. Third, the only direct evidence of Ardoin's guilt introduced at trial pointed toward Ardoin being Tom's killer, not an accomplice.[5]

Considering harmlessness with these facts in mind, we have grave doubt whether the trial court's refusal to reopen closing argument had a substantial and injurious effect on the jury's verdict. Closing argument is an essential aspect of a criminal trial, an aspect that is so important that its total denial to a defendant undermines the "very premise of our adversary system of criminal justice." *Herring*, 422 U.S. at 862. As defense counsel stated in his motion for a new trial, had the trial court reopened argument he would have addressed the law and elements of robbery, aiding and abetting, and felony murder, and argued to the jury

---

[5] Regarding the DNA evidence, Ardoin testified that, the day before Tom's murder, he met with him to purchase a quarter ounce of heroin. Ardoin wanted to test the heroin before purchasing it, so he had Tom inject him with a sample and, as Tom did so, a few drops of blood ran down Ardoin's arm to Tom's hand.

that no evidence existed to prove these elements beyond a reasonable doubt. Specifically, he would have explained to the jury that, to convict, it needed to find beyond a reasonable doubt that Ardoin formed the "specific intent" to rob, or aid and abet in another's robbery of, Tom, and that Ardoin's "proven acts, words or encouragement" did in fact aid and abet in this crime. *See United States v. Gaskins*, 849 F.2d 454, 460 (9th Cir. 1988) (concluding that a defendant was prejudiced in similar circumstances in part because counsel's closing argument did not address that an aider or abettor must affirmatively contribute to the crime, rather than merely being a "knowing spectator"). He would have told the jury that without specific evidence as to each of these points it could not convict the defendant, would have explained what evidence is necessary to prove each of these points beyond a reasonable doubt, and would have argued that such evidence had not been established by the testimony at the trial. *See Herring*, 422 U.S. at 862 (noting that, "for the defense, closing argument is the last clear chance to try to persuade the trier of fact that there may be reasonable doubt of the defendant's guilt"). For example, he could have argued that no evidence existed as to what Ardoin did to aid and abet in someone else's robbery, or that he had formed the necessary intent to aid and abet in that offense. He would have argued that Tom's "death was not a natural and probable or foreseeable consequence of a robbery in

10

this case." These are points that do not necessarily occur to the average juror, let alone all twelve jurors in a particular trial. Jurors are not expected to conjure up such arguments themselves. This is especially true in this case, as the jury never heard any discussion of the law and elements of felony murder at all. The instruction, and the prosecution's discussion of it, only pertained to Jacquez, whose counsel did not discuss felony murder during his closing argument (instead, his closing consisted almost exclusively of an attack on Burgos's credibility).

It is counsel's role to try to present arguments in the most forceful and convincing manner so as to persuade jurors of the correctness of the defendant's position, or at least to raise a reasonable doubt as to the validity of the factors that might otherwise appear to suggest a client's guilt beyond a reasonable doubt. Although the preclusion of argument as to the theory on which a defendant is ultimately convicted may not constitute structural error, there can be no doubt that the inability of counsel to present *any* argument on a theory of conviction weighs heavily in a determination whether the error was harmless. *See Glebe v. Frost*, 135 S. Ct. 429 (2014) (concluding on AEDPA review that no clearly established Supreme Court precedent establishes that such error is structural); *Gautt v. Lewis*, 489 F.3d 993, 1015 (9th Cir. 2007) (noting that our precedent suggesting that such error is structural "predates . . . Supreme Court cases . . . which stressed the limited

11

number of 'structural errors'"). Certainly the defendant has a far better chance of not being convicted on a legal theory that is foreign to the average juror if his counsel is not forced to remain silent on that theory because of an error of constitutional magnitude by the judge presiding over his trial. In the case before us, we have grave doubt about whether the jury would have convicted Ardoin had counsel been able to offer the arguments he suggested, or any other arguments as to felony murder, after this theory was for the first time offered to the jury as the basis for convicting Ardoin.

It is true, as the state argues, that Ardoin's counsel briefly mentioned during closing argument that "there is no evidence" that Ardoin "somehow helped" someone else murder Tom. The state seizes on this stray remark, out of context, arguing that Ardoin's counsel had an opportunity to address the felony murder theory under which Ardoin was ultimately convicted. Counsel's remark does not alter our conclusion as to harmlessness, however. It is clear from the context that this statement was not a response to the possibility of felony murder liability or the elements of that rule, but instead part of an attack on Burgos's credibility. Ardoin's primary defense was that he lacked the physical strength to kill Tom due to his own physical ailments. During the state's closing argument, the prosecutor responded to this argument by conceding that evidence suggested Ardoin alone did

not murder Tom, but that if the jury believed "only one person did it, that six foot two, 210-pound Mr. Ardoin may, may have been capable of doing it." In his closing argument, Ardoin's counsel responded by stating that the notion that two people participated in Tom's death contradicted the testimony of the state's primary witness, stating that "even [the prosecutor] doesn't believe" Burgos. The passage the state relies on is therefore in fact not an argument against accomplice liability at all, but instead part of a different argument challenging Burgos's credibility.

Moreover, this stray remark cannot be an adequate substitute for a full closing argument regarding felony murder. Closing argument "serves to sharpen and clarify the issues" for the jury, *Herring*, 422 U.S. at 862, which may not initially understand an issue as complex as California's felony murder rule. The argument that Ardoin's counsel would have made had he been aware that his client faced felony murder liability—an argument that would have specifically addressed the elements of the offense and the prosecution's failure to prove them—would have had a much greater impact on the jury than the brief, out-of-context remark offered here. Thus, we have grave doubt whether the trial court's constitutional error had a substantial and injurious effect on the jury's verdict.

13

The district court is directed to issue the writ ordering the state to retry

Ardoin within a reasonable time or to release him.

**REVERSED.**

*Ardoin v. Arnold*, No. 13-15854

McKEOWN, J., dissenting

I respectfully dissent. The disposition concludes that the California Court of Appeal "recognized the state court's error to be of federal constitutional magnitude"—and thus that the court decided the constitutional question in Ardoin's favor. The Court of Appeal's analysis does not support this conclusion. Rather, the court acknowledged the constitutional dimensions of the error, but determined that the error did not rise to the level of a constitutional violation under either federal or state law. This decision must be afforded deference under the Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254, and habeas relief is unavailable unless the Court of Appeal's determination that there was no constitutional error is "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

Here, fairminded jurists could certainly disagree about the existence of a federal constitutional error. No Supreme Court case clearly establishes that a trial court's refusal to reopen closing arguments is a violation of the Sixth Amendment, *see* 28 U.S.C. § 2254(d)(1), and we cannot rely on our own precedent to determine "that a particular constitutional principle is 'clearly established.'" *Lopez v. Smith*,

1

135 S. Ct. 1, 2 (2014) (per curiam).

The majority cites *Herring v. New York*, 422 U.S. 853 (1975), and *Sheppard v. Rees*, 909 F.2d 1234 (9th Cir. 1989), to support the determination of a constitutional violation. However, *Herring* is distinguishable from Ardoin's case. In *Herring*, the Supreme Court concluded that "there can be no justification for a statute that empowers a trial judge to deny absolutely the opportunity for any closing summation at all," and noted the high toll that "total denial of final argument" can impose on defendants. *Id.* at 863. Here, Ardoin was not absolutely denied the right to closing argument, and, particularly in light of the Supreme Court's repeated exhortations to "the lower courts—and the Ninth Circuit in particular—against framing [Supreme Court] precedents at . . .a high level of generality," *Lopez*, 135 S. Ct. at 4, *Herring* cannot "establish clearly the specific rule [Ardoin] needs." *Id.* Likewise, as a circuit case, *Sheppard* fails to provide the benchmark necessary to clearly establish a constitutional violation. *Id.*

Separately, I question the majority's harmlessness analysis under *Brecht v. Abrahamson*, 507 U.S. 619 (1993). *Brecht* provides that relief may only be granted if there is "grave doubt" that the trial error had a "substantial and injurious effect or influence in determining the jury's verdict." *O'Neal v. McAnich*, 513 U.S. 432, 436 (1995). *Brecht* requires more than a "reasonable possibility" that the

2

error alleged was harmful. *Davis v. Ayala*, 135 S. Ct. 2187, 1298 (2015) (citations omitted). "The *Brecht* standard reflects the view that a "State is not to be put to th[e] arduous task [of retrying a defendant] based on mere speculation that the defendant was prejudiced by trial error; the court must find that the defendant was actually prejudiced by the error." *Id.* (quoting *Calderon v. Coleman*, 525 U.S. 141, 146 (1998) (per curiam )).

Here, the error did not have a "substantial and injurious effect" on the jury verdict for the very reasons identified by the Court of Appeal: (1) Ardoin was on notice of his potential culpability under the felony-murder rule as an aider-and-abettor; (2) defense counsel knew that felony-murder and aider-and-abettor principles were at issue; and (3) the primary theory of the defense was that Ardoin was not present when the murder took place—and thus could not have participated as either the principal or as an aider and abettor. Accordingly, I would affirm the district court's denial of habeas corpus relief.